2000 ND 3

**James Joseph DeCOTEAU, Plaintiff and Appellant,**

v.

**NODAK MUTUAL INSURANCE COMPANY, Defendant and Appellee**

No. 990100.

Supreme Court of North Dakota.

Jan. 10, 2000.

H. Patrick Weir, Jr., Lee Hagen Law Office, Ltd., Fargo, N.D., Jeffrey J. Lowe, Gray & Ritter, P.C., St. Louis, MO, and Joseph P. Danis and John J. Carey, Carey & Danis, LLC, St. Louis, MO, for plaintiff and appellant. Submitted on brief.

Richard N. Jeffries and Ronald J. Knoll, Jeffries, Olson, Flom & Bullis, P.A., Moorhead, MN, for defendant and appellee. Submitted on brief.

SANDSTROM, Justice.

[¶ 1] James Joseph DeCoteau appealed from a summary judgment dismissing his action against Nodak Mutual Insurance Company for underinsured motorist coverage. We hold there is a material issue of fact about whether Nodak's 1992 or 1994 version of its insurance policy was in effect when DeCoteau was involved in an automobile accident. Because there is a material issue of fact about which policy was in effect when the accident occurred and DeCoteau may be entitled to underinsured benefits under the 1992 policy, we reverse and remand for further proceedings.

I

[¶ 2] DeCoteau was a named insured under an "Automaster auto policy" with Nodak, which provided him with underinsured motorist coverage in the minimum statutory required amount of "$25,000 each person / $50,000 each occur." for a semiannual premium "included" with his $6 premium for uninsured motorist coverage. On October 6, 1994, DeCoteau was injured in an automobile accident with a tortfeasor who carried automobile insurance with a liability limit of $25,000 per person, and DeCoteau received $25,000 under the tortfeasor's policy. DeCoteau claimed he sustained damages in the accident in excess of $25,000 and sought underinsured coverage under his policy with Nodak. Nodak denied DeCoteau's claim.

[¶ 3] DeCoteau sued Nodak for breach of contract in allegedly providing him illusory underinsured coverage, breach of a duty of good faith and fair dealing, misrepresentation and omission, unjust enrichment, and promissory estoppel. Although not certified as a class action, DeCoteau's complaint alleged he was suing on behalf of himself and as class representative for all individuals who had purchased the minimum statutory required amount of underinsured coverage from Nodak since 1992 and had been denied proceeds under their coverage.

[¶ 4] Nodak denied liability and moved for summary judgment. DeCoteau opposed Nodak's motion and moved under N.D.R.Civ.P. 56(f) for a stay pending further discovery. He sought additional time to obtain a copy of his policy with Nodak as well as information regarding whether Nodak had ever paid an underinsured claim under a policy providing the minimum statutory required amount of underinsured coverage.

[¶ 5] The trial court granted Nodak summary judgment and dismissed DeCoteau's breach of contract claim, ruling a 1994 version of Nodak's policy was not illusory because it provided coverage under narrow circumstances and a 1992 version of Nodak's policy did not raise issues about illusory coverage because the 1992 version provided broader coverage than the 1994 version. The court rejected DeCoteau's argument the doctrine of reasonable expectations applied to the case because he had made no argument the insurance policy was ambiguous. The court dismissed DeCoteau's other claims, concluding they were dependent upon his contract claim. The court also denied DeCoteau's motion for a stay, ruling the question whether Nodak's underinsured coverage was illusory was a question of law that could be decided without further discovery. DeCoteau appealed.

[¶ 6] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. DeCoteau's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

■ [¶ 7] We review DeCoteau's appeal in the posture of summary judgment, which is a procedure for promptly and expeditiously disposing of an action without a trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes would not alter the result. *Close v. Ebertz*, 1998 ND 167, ¶ 8, 583 N.W.2d 794.

## III

■ [¶ 8] The issues raised in this appeal require a brief description of underinsured motorist coverage in North Dakota. The main types of underinsured coverage are gap or difference-in-limits coverage and excess coverage. *See Score v. American Family Mut. Ins. Co.*, 538 N.W.2d 206, 208 (N.D.1995). In *North River Ins. Co. v. Tabor*, 934 F.2d 461, 464 (3rd Cir. 1991) (citations omitted and emphasis in original), the Third Circuit Court of Appeals aptly explained the difference between those types of coverage:

[Gap or difference-in-limits] coverage places the insured party in the same position that he would have been in had the tortfeasor carried liability insurance in the amount of the insured's underinsured motorist policy limit. Under this "gap" theory of underinsured motorist coverage—so-called because the coverage merely fills the "gap" between the tortfeasor's liability coverage and the injured party's underinsured motorist coverage, a driver is considered "underinsured" when his liability coverage does not at least equal *the uninsured/underinsured coverage carried* by the injured insured.

Under [excess coverage], underinsured motorist coverage supplies a fund for full compensation to the injured insured and thus the insured is entitled to compensation from his insurer regardless of any recovery obtained from other sources. The insured may therefore recover underinsured motorist benefits until his policy limits are reached or he is fully compensated for his damages, whichever comes first. Under this "excess" theory of underinsured motorist coverage—*i.e.*, the injured insured's coverage being reckoned as "excess" over and above the liability policy of the tortfeasor, a tortfeasor is "underinsured"

when his liability coverage does not at least equal *the damages suffered* by the injured insured.

[¶ 9] In 1987, the North Dakota legislature enacted mandatory difference-in-limits underinsured coverage that required motor vehicle insurers to provide their insureds with underinsured coverage of either $50,000 per person and $100,000 per accident, or the insured's bodily injury liability limit, whichever was greater. *See* 1987 N.D. Sess. Laws ch. 369, § 2. The legislature defined an "underinsured motor vehicle" as a motor vehicle covered by insurance with a liability limit that was less than an insured's underinsured coverage, or had been reduced by payments to other persons injured in an accident to an amount less than the limits of the insured's underinsured coverage. 1987 N.D. Sess. Laws ch. 369, § 1. Under 1987 N.D. Sess. Laws ch. 369, § 2, an insurer's underinsured liability could not exceed the limits of the underinsured coverage stated in the insured's policy, and the insurer's maximum liability was the lesser of:

a. The difference between the amount paid in compensatory damages to the insured by and for any person or organization who may be legally liable for the bodily injury, sickness, disease, or death resulting therefrom, and the limit of underinsured motorist coverage; or

b. The amount of compensatory damages, established but not recovered by any agreement, settlement, or judgment with or for the person or organization legally liable for the bodily injury, sickness, disease, or death resulting therefrom.

[¶ 10] In 1989 N.D. Sess. Laws ch. 375, the legislature amended the mandatory minimum requirements for underinsured coverage, in part, to alleviate a cost problem for "long-haul trucks" that were required to maintain a million dollars in lia-

bility insurance and, under the 1987 law, were required to have the same amount of underinsured coverage. *See Hearing on H.B. 1155 Before the House Committee on Industry, Business, and Labor*, 51st N.D. Legis. Sess. (Jan. 30, 1989) (prepared testimony of Thomas O. Smith, p. 1). The statutory provisions relevant to this appeal have not been amended since 1989, *see* N.D.C.C. §§ 26.1–40–15.1(2), 26.1–40–15.3(2), and 26.1–40–15.4(1), and require motor vehicle insurers to provide their insureds with underinsured coverage of at least $25,000 for bodily injury or death to one person in any one accident and $50,000 for bodily injury or death to two or more persons in any one accident. *See* N.D.C.C. §§ 26.1–40–15.3(1); 26.1–40–15.2(1); 39–16.1–11(2).

[¶ 11] As originally introduced in 1989, H.B. 1155 mandated a modified difference-in-limits approach for underinsured coverage. *See Hearing on H.B. 1155 Before the House Committee on Industry, Business, and Labor*, 51st N.D. Legis. Sess. (Jan. 30, 1989) (prepared testimony of Thomas O. Smith, pp. 10–11). Amendments during the 1989 legislative process, however, altered the minimum statutory requirements for underinsured coverage.

[¶ 12] The 1989 legislature retained essentially the same definition of an underinsured motor vehicle used in the 1987 law—a motor vehicle covered by insurance with a liability limit that was less than an insured's underinsured coverage, or had been reduced by payments to other persons injured in an accident to an amount less than the limits of the insured's underinsured coverage. 1989 N.D. Sess. Laws ch. 375, § 1. *See* N.D.C.C. § 26.1–40–15.1(2). The 1989 legislature enacted language changing an insurer's maximum liability for underinsured coverage to the lowest of (1) the compensatory damages established but not recovered from the tortfeasor, or (2) the insured's liability limit for underinsured coverage.[1] 1989 N.D.

1. As originally introduced in H.B. 1155, the    language about an insurer's maximum

Sess. Laws ch. 375, § 3. *See* N.D.C.C. § 26.1–40–15.3(2). The legislative history reflects the legislature deleted difference-in-limits language from the introduced version of what became N.D.C.C. § 26.1–40–15.3(2), *see* fn. 1, to make insureds "whole" by allowing them to recover underinsured benefits until their policy limits are reached or they are fully compensated for their injuries. *See Hearing on H.B. 1155 Before the Conference Committee on Industry, Business, and Labor,* 51st N.D. Legis. Sess. (Apr. 4, 1989) (testimony of Senator David Nething and Larry Schoenwald).

■ [¶ 13] The 1989 legislature also adopted N.D.C.C. § 26.1–40–15.4(1), which provides:

1. Any damages payable to or for any insured for uninsured or underinsured motorist coverage must be reduced by:

    a. The amount paid, or payable under any workers' compensation or other similar law, exclusive of nonoccupational disability benefits; and

    b. Amounts paid or payable under any valid and collectible motor vehicle medical payments, personal injury protection insurance, or similar motor vehicle coverages.

Section 26.1–40–15.4(1), N.D.C.C., was intended to permit an offset against damages payable for benefits paid under workers compensation law and first party automobile coverage. *See Hearing on H.B. 1155 Before the House Committee on Industry, Business, and Labor,* 51st N.D. Legis. Sess. (Jan. 30, 1989) (prepared testimony of Thomas O. Smith, pp. 3, 11); *Hearing on H.B. 1155 Before Conference Committee on Industry, Business, and Labor,* 51st N.D. Legis. Sess. (Apr. 4 and 7, 1989) (prepared testimony of Thomas O. Smith, pp. 4–5). The testimony of a representative of the insurance industry, Thomas O. Smith, explains that N.D.C.C. § 26.1–40–15.4(1) was not intended to allow reductions for third-party liability coverage:

Subsection 1 addresses the issue of affordability of coverage. The subsection is designed to prevent potential duplication of coverage for the same loss by making worker's compensation, automobile medical payments, and personal injury protection coverage primary, while making uninsured motorist and underinsured motorist secondary. Subsection 1 does not in any way reduce the amount of coverage that is available for either uninsured or underinsured motorist coverages. It only addresses how one deals with "damages" in determining what amount the insurance company must pay under those coverages.

The best way of understanding this may be through an example. Assume, for sake of discussion, that an uninsured driver runs into someone and seriously injures them. The injured person, who is insured, receives $30,000 in basic no-fault benefits. It is determined that as a result of the motor vehicle accident, the injured person's total damages are $100,000. The injured person also has available $100,000 in underinsured mo-

---

amount of underinsured liability, which is now found in N.D.C.C. § 26.1–40–15.3(2), said:

2. The maximum liability of the underinsured motorist coverage is the lowest of:
    a. *The difference between the amount paid in compensatory damages to the insured by and for any person or organization who may be legally liable for the bodily injury, sickness, disease, or death resulting therefrom, and the limit of underinsured motorist coverage;*

    b. The amount of compensatory damages established but not recovered by any agreement, settlement, or judgment with or for the person or organization legally liable for the bodily injury, sickness, disease, or death resulting therefrom; or
    c. The limits of liability of the underinsured motorist coverage.

As we discuss later, the 1989 legislature ultimately did not enact the underscored language in the above-quoted provision.

torist coverage. The Senate amendment, by deleting the existing language, would allow the injured person to recover the entire $100,000 even though he has already been paid $30,000 in no-fault benefits. This results in duplicate benefits being paid. Subsection 1, if left in the Bill, would require the total damages of $100,000 to be reduced by the $30,000 in no-fault benefits that had been paid. Then the injured person would only be entitled to recover $70,000 in damages for which he has not been paid.

The injured person is actually compensated for his damages. The only purpose of subsection 1 is to avoid a potential duplication for recovery of the same loss.

*Hearing on H.B. 1155 Before the Conference Committee on Industry, Business, and Labor,* 51st N.D. Legis. Sess. (April 4 and 7, 1989) (prepared testimony of Thomas O. Smith, pp. 4–5).

[¶ 14] During the legislative process, the Senate deleted the difference-in-limits language of what became N.D.C.C. § 26.1–40–15.3(2), *see* fn. 1, and the language in what became N.D.C.C. § 26.1–40–15.4(1). *See Hearing on H.B. 1155 Before Senate Committee on Industry, Business, and Labor,* 51st N.D. Legis. Sess. (March 8 and 15, 1989). The legislature ultimately adopted a conference committee compromise to retain the definition of underinsured motor vehicle in N.D.C.C. § 26.1–40–15.1(2); to delete the difference-in-limits language in what became N.D.C.C. § 26.1–40–15.3(2), *see* fn. 1; and to adopt the language of N.D.C.C. § 26.1–40–15.4(1). *See Hearing on H.B. 1155 Before Conference Committee on Industry, Business, and Labor,* 51st N.D. Legis. Sess. (April 4 and 7, 1989).

[¶ 15] The 1989 legislative history reflects the legislature retained the definition of underinsured motor vehicle to alleviate concerns about requiring insurers to open a claim file whenever insureds' underinsured coverage was the same as a tortfeasor's liability coverage; the legislature deleted the difference-in-limits language in what became N.D.C.C. § 26.1–40–15.3(2) to try to make insureds "whole" by allowing them to receive their underinsured coverage limits in some situations; and the legislature adopted the language in N.D.C.C. § 26.1–40–15.4(1) to allow insurers to reduce damages paid to insureds only for amounts paid or payable under an insured's first-party motor vehicle policy and under workers compensation law. *See Hearing on H.B. 1155 Before the Conference Committee on Industry, Business, and Labor,* 51st N.D. Legis. Sess. (April 4 and 7, 1989).

[¶ 16] To trigger underinsured coverage under the current statutory provisions for underinsured motorist coverage, a tortfeasor's motor vehicle must meet the statutory definition of underinsured motor vehicle in N.D.C.C. § 26.1–40–15.1(2). If that threshold definition is not satisfied, an insured is not entitled to underinsured proceeds under our statutory scheme. If the threshold definition of underinsured vehicle is satisfied, however, the insurer's maximum liability under N.D.C.C. § 26.1–40–15.3(2) is the lowest of (1) the compensatory damages established but not recovered from the tortfeasor, or (2) the insured's liability limits for underinsured coverage. *See Score,* 538 N.W.2d at 209 n. 2 (stating current statutory provisions appear to require excess coverage if the tortfeasor's vehicle is underinsured). The language of N.D.C.C. § 26.1–40–15.4(1) allows insurers to reduce damages paid to the insured for underinsured coverage only for amounts paid or payable under workers compensation law and under the insured's first-party motor vehicle coverage.

[¶ 17] Sections 26.1–40–15.1 to 26.1–40–15.7, N.D.C.C., outline the current minimum statutory requirements for underinsured coverage, but an insurer may provide greater coverage. N.D.C.C. § 26.1–40–15.7(5). Within the statutory framework for underinsured coverage, we consider DeCoteau's arguments.

## IV

[¶ 18] DeCoteau argues the trial court erred in granting summary judgment. He argues coverage under the reasonable expectation doctrine, breach of contract, and illusory coverage. Our review of DeCoteau's arguments requires an analysis of the extent of his underinsured coverage within the parameters of our minimum statutory requirements for underinsured coverage.

### A

[¶ 19] The interpretation of an insurance policy is a question of law, fully reviewable on appeal. *Close*, 1998 ND 167, ¶ 12, 583 N.W.2d 794. We review a trial court's interpretation of an insurance policy by independently examining and construing the policy. *Id.* We look first to the language of the policy as a whole, and if the language is clear on its face, there is no room for construction. *See Thompson v. Nodak Mut. Ins. Co.*, 466 N.W.2d 115, 119 (N.D.1991). The determination of whether or not a policy is ambiguous is a question of law for the court. *Sellie v. North Dakota Ins. Guar. Ass'n*, 494 N.W.2d 151, 156 (N.D.1992).

### B

[¶ 20] DeCoteau's argument suggests there is a factual dispute whether he was insured under a 1992 or a 1994 version of Nodak's Automaster policy when the accident occurred on October 6, 1994. DeCoteau and Nodak do not dispute DeCoteau was initially covered under the 1992 version of Nodak's Automaster policy, and during 1994, Nodak revised the 1992 policy for reissue in 1994. The North Dakota Department of Insurance approved Nodak's 1994 Automaster policy, effective September 13, 1994. Although Nodak argues it is undisputed DeCoteau was insured under the 1992 policy when the accident occurred, it is not clear from this record which version of the policy was then in effect. Because we conclude DeCoteau may be entitled to underinsured proceeds under the 1992 version of the policy, but not under the 1994 version, we conclude there is a material factual dispute about which version applies to DeCoteau's claim, and we reverse the summary judgment and remand for a determination of which policy was in effect when the accident occurred.

### C

[¶ 21] Nodak's 1992 Automaster policy provided, in part:

PART V

UNINSURED AND UNDER–INSURED MOTOR VEHICLE COVERAGES

. . . .

COVERAGE 1–2—Under–insured Motor Vehicle

We will pay damages for bodily injury:

1. caused by accident; and
2. arising out of the maintenance or use of an under-insured motor vehicle.

There must be damages an insured:

1. has not been compensated for; and
2. is legally entitled to recover from the owner or driver of an under-insured motor vehicle.

. . . .

Under-insured Motor Vehicle means a land motor vehicle or attached trailer, the ownership, maintenance or use of which is insured or bonded for bodily injury liability in amounts that:

1. meet the requirements of the laws of the state in which your auto is mainly garaged; and
2. are less than the amount needed to compensate the insured for damages.

. . . .

When Coverages 1–1 and 1–2 Do Not Apply

THERE IS NO COVERAGE UNDER COVERAGES 1–1 OR 1–2:

. . . .

8. There is no coverage until the limits of liability of all bodily injury liability bonds and policies that apply have been used up by payments of judgements [sic] or settlements,

. . .

. . . .

Limits of Liability

. . . .

COVERAGE 1–2

. . . .

2. The maximum liability of the under-insured motorist coverage is the lower of:

a. The amount of compensatory damages established but not recovered by any agreement, settlement, or judgement [sic] with or for the person or organization legally liable for the bodily injury, sickness, disease, or death resulting therefrom; or

b. The limits of liability of the under-insured motorist coverage.

3. Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the insured:

. . . .

b. by or for any person or organization who is or who may be held legally liable for the bodily injury to the insured; . . .

[¶ 22] Nodak's 1992 Automaster policy defined underinsured motor vehicle, in part, as a vehicle with a liability policy that provides bodily injury liability insurance in an amount less than the amount needed to compensate the insured for damages. Nodak's 1992 policy defines underinsured motor vehicle in broader language than required by the statutory definition in N.D.C.C. § 26.1–40–15.1(2). An insurer may provide greater underinsured coverage than required by statute. N.D.C.C. § 26.1–40–15.7(5). Under the 1992 policy's definition of underinsured motor vehicle, DeCoteau was injured by an underinsured vehicle, because the tortfeasor's liability coverage was arguably less than the amount necessary to compensate DeCoteau for damages. *See Thompson*, 466 N.W.2d at 118 (concluding tortfeasor's vehicle was underinsured under similar policy provisions). The 1992 policy follows statutory language for calculating an insurer's maximum liability for underinsured coverage. *See* N.D.C.C. § 26.1–40–15.3(2). The 1992 policy, however, says there is no underinsured coverage until the limits of all applicable liability policies have been used by payments of judgments or settlements and requires reduction for amounts paid or payable to the insured by any person or organization legally liable for the insured's bodily injury. Those reducing provisions are contrary to our current statutory provisions for calculating an insurer's maximum liability in N.D.C.C. § 26.1–40–15.3(2) and do not come within the reducing language for first-party automobile coverage in N.D.C.C. § 26.1–40–15.4(1). *Compare Score*, 538 N.W.2d at 209–10 (stating similar policy provisions were consistent with difference-in-limits approach for determining insurer's maximum liability under pre–1989 law); *Thompson*, 466 N.W.2d at 116–17 (same). Depending on the extent of DeCoteau's injuries, he may be entitled to underinsured proceeds under the 1992 version of Nodak's policy.

[¶ 23] As relevant to this case, Nodak's 1994 Automaster policy included language similar to the 1992 policy, except the 1994 policy defined underinsured motor vehicle as:

a motor vehicle for which there is a bodily injury liability insurance policy, or bond providing equivalent liability protection, in effect at the time of the accident, but the applicable limit of bodily injury liability of such policy or bond:

a. is less than the applicable limit for under-insured motorist coverage under this policy; or

b. has been reduced by payments to other persons who sustained bodily injury in the accident to an amount

less than the limit for under-insured motorist coverage under this policy.

[¶ 24] Nodak's 1994 Automaster policy follows the statutory definition for underinsured motor vehicle. *See* N.D.C.C. § 26.1–40–15.1(2). Under the language in the 1994 policy, the tortfeasor's vehicle is not an underinsured vehicle, because the tortfeasor's liability insurance is equal to DeCoteau's underinsured coverage. Under the 1994 policy, DeCoteau has not met the threshold for underinsured coverage in N.D.C.C. § 26.1–40–15.1(2), and he therefore is not entitled to underinsured proceeds under that policy.

[¶ 25] Because DeCoteau may be entitled to underinsured benefits under our statutory provisions for underinsured coverage and the 1992 policy, but he is not entitled to underinsured benefits under our statutory provisions and the 1994 policy, we conclude there is a material issue of fact about which version of the policy was in effect when the accident occurred on October 6, 1994.

### V

[¶ 26] We reverse the summary judgment and remand for further proceedings consistent with this opinion.[2]

[¶ 27] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, CAROL RONNING KAPSNER, MARY MUEHLEN MARING, JJ., concur.

---

**2.** Because of the resolution of this issue, the other issues raised by DeCoteau are not likely to arise on remand and any discussion of those issues would be advisory. We therefore decline to address those issues. *See Sprunk v. North Dakota Workers Comp. Bur.*, 1998 ND 93, ¶ 15, 576 N.W.2d 861 (stating Supreme Court will not render advisory opinion); *Loberg v. North Dakota Workers Comp. Bur.*, 1998 ND 64, ¶ 12, 575 N.W.2d 221 (stating Supreme Court will not address issues not necessary for disposition of case and not certain to arise on remand).