2005 ND 136

**GO COMMITTEE, by and through its spokesperson Robert HALE, and Dr. Jerome Schuler, and Ward County Farm Bureau, by and through its representative John Fjeldahl, Plaintiffs, Appellees and Cross–Appellants**

v.

**CITY OF MINOT, Defendant, Appellant and Cross– Appellee.**

No. 20040367.

Supreme Court of North Dakota.

July 20, 2005.

Lynn M. Boughey, Boughey Law Firm, Minot, N.D., for plaintiffs, appellees and cross-appellants.

Nevin Van de Streek, City Attorney, Minot, N.D., for defendant, appellant and cross-appellee.

MARING, Justice.

[¶ 1] The City of Minot ("Minot") appealed from a declaratory judgment, and pealed from a declaratory judgment, and the GO Committee, by and through its spokesperson Robert Hale, and Dr. Jerome Schuler, and Ward County Farm Bureau, by and through its representative John Fjeldahl (collectively referred to as "GO Committee"), cross-appealed from an order, an order for judgment, and the judgment entered in a declaratory judgment action challenging Minot's handling of sales tax receipts. We affirm in part and reverse in part.

I

[¶ 2] In 1999, Minot adopted Ordinance No. 3560 creating a temporary surtax on its sales and use taxes to make improvements to its water supply, beginning January 1, 2000, if ratified by a majority of the voters in a special election. The ordinance was approved by the voters. It provides, in part:

AN UNCODIFIED ORDINANCE TO IMPOSE A TEMPORARY SURTAX ON THE CITY SALES AND USE TAXES, WITH THE PROCEEDS OF SUCH SURTAX TO BE USED FOR MAKING IMPROVEMENTS TO THE CITY'S WATER SUPPLY.

. . . .

Sec. 1. Definitions.

*"Improvements"* as used herein in the context of contemplated improvements to the City of Minot water supply means any measure or activity which has the effect, direct or indirect, of enhancing . . . such water supply, including but not limited to . . . treatment facilities. . . .

*"Project"* means the Northwest Area Water Supply (NAWS) Project.

Sec. 2. Municipal water supply improvements surtax imposed; amount; collection.

. . . .

(d) The administrator is authorized (but not required) to contract with the

State Tax Commissioner to enforce this division, subject to confirmation of the contract by the city council. . . .

Sec. 3. Use of municipal water supply improvements surtax.

The revenues generated by the municipal water supply improvements surtax, less reasonable costs of administering the surtax, shall be expended exclusively to make improvements to the municipal water supply for the City of Minot through the mechanism of the Project . . . or, failing that, through any prudent and reasonable means to the same end. Provided that, however, such expenditures shall be limited to those which relate to the capital costs of accomplishing such improvements, and shall not extend to those which relate to the operating costs of the Project or of any water utility.

Sec. 4. Duration and Suspension of municipal water supply improvements surtax.

. . . .

(c) Any determination by the Finance Director called for in subsection (a) [termination of the surtax] or subsection (b) [suspension of the surtax] shall be considered binding and unimpeachable on all affected parties as long as it is made in good faith. In making such estimate the Finance Director is authorized and directed to take into account (but not necessarily exclusively so) all of the following factors—

. . . .

(2) the earnings likely to be derived from tax proceeds set aside to make future cash payments during such time as it is possible to accomplish such set-aside.

[¶ 3] In determining how much of its sales tax revenues were due to pre–2000 retail sales and post–1999 retail sales, Minot estimated the amounts by extrapolating from its experience with a prior tax. Minot commingled excess NAWS funds available for investment with other funds and distributed interest earned by those pooled funds to its general fund, rather than adding interest generated by the NAWS surtax to the NAWS Fund. Minot used some of the surtax revenue to make improvements to its water treatment plant.

[¶ 4] The GO Committee brought a declaratory judgment action raising issues about (1) whether Ordinance No. 3560 requires an exact accounting and distribution of the tax to the NAWS fund by the State Tax Commissioner instead of an estimate; (2) whether interest derived from the NAWS fund should be placed in the NAWS fund, instead of Minot's general fund; (3) whether the ordinance prohibits use of NAWS funds for paying administrative costs of collecting other taxes; and (4) whether the ordinance prohibits use of NAWS funds for improvements to Minot's water treatment plant. The complaint also alleged misuse of NAWS funds in balancing a "deficit caused by overspending economic development monies" and in upgrading Minot's water treatment plant, and sought to enjoin dissemination of incorrect information.

[¶ 5] The district court issued an opinion and order on motions ruling: (1) "The City must obtain an exact accounting from the State in order to determine the amount of money intended for the NAWS Fund and the amount of money intended for the Arena Fund"; (2) "The interest accumulated from NAWS revenues must be placed in the NAWS Fund"; (3) With regard to administrative fees incurred in the collection of Minot's sales taxes, "an accounting must occur to determine whether the appropriate amount of money was returned to the NAWS Fund"; (4) "[U]se of NAWS funds to improve the Minot water treatment plant was within

the discretion of the Minot City Council"; (5) There must be an accounting "to verify that the proper funds are placed back into the NAWS Fund"; (6) On the claim that Minot "improperly used over $1.8 million in NAWS funds to balance a deficit caused by overspending from the economic development fund," Minot's "accounting entry was appropriate, as no funds were ever actually transferred"; and (7) On the claim that Minot disseminated false information, the court "decline[d] to impose a restriction on the City which would somehow limit what City officials could and could not talk about."

[¶ 6] The court issued an order for declaratory judgment noting the parties stipulated "that the amount of interest as of August 31, 2004, that should have been earned by the NAWS fund was $1,020,204.35," and that an exhibit "established that the principal amount of the NAWS fund as of August 31, 2004 was $10,832,560.09." The Clerk entered a declaratory judgment ordering Minot is not required to maintain a separate bank account for NAWS funds, but must account for and invest them separately from other funds, must clearly identify transfers to and from the NAWS fund, and must restore the NAWS fund to the $11,852,764.44 level it should have been on August 31, 2004.

[¶ 7] The City of Minot appealed, raising the following issues:

1. Did the City act properly when—consistent with a policy it had followed uniformly for decades and as specifically authorized and required in annual budget ordinances enacted subsequent to Ordinance 3560 (a more general ordinance which arguably provided otherwise)—it allocated certain interest earnings to its General Fund, rather than to the special fund set up by said Ordinance 3560?

2. Did the City of Minot stray from the "range of reasonableness" when it decided to apportion sales tax revenues—among various funds entitled thereto—by use of a mathematical formula, which formula was derived by way of extrapolation from its prior experience in a very similar situation?

The GO Committee cross-appealed, raising the following issues:

1. Whether the City violated its own ordinance and the vote of the people approving that ordinance by diverting the interest derived from the NAWS funds to the general fund.

2. Whether the lower court's decision relating to distribution of the NAWS funds is correct.

3. Whether the City violated its own ordinance and the vote of the people approving that ordinance by using the NAWS funds to upgrade the City's own water treatment plant.

4. Whether the City violated its own ordinance and the vote of the people approving that ordinance by using the NAWS funds to cover the City's deficit in its economic development account and whether the lower court erred in not requiring the City to place the NAWS funds in a separate account.

5. Whether the lower court erred in not granting an injunction against the City prohibiting city officials from providing "incorrect information" relating to the NAWS fund.

## II

[¶ 8] The judiciary's role in reviewing a municipality's interpretation and application of a municipal ordinance is limited by the doctrine of separation of powers to determining if the municipality clearly abused its discretion:

Our review of a municipality's adoption, interpretation and application of its own ordinances is strictly limited by the doctrine of separation of powers. A municipality has broad discretion to determine the manner and means of exercising the powers delegated to it by state law. *Ebach v. Ralston*, 469 N.W.2d 801, 804 (N.D.1991); *Peterson v. McKenzie County Public School District No. 1*, 467 N.W.2d 456, 458 (N.D.1991). Courts will not substitute their judgment for that of the municipality's governing body in interpreting or applying ordinances unless an abuse of discretion is clearly shown. *Sloven v. Olson*, 98 N.W.2d 115, 124 (N.D.1959). To establish an abuse of discretion, it must be shown that the municipality's governing body acted arbitrarily, oppressively or unreasonably. *E.g., Pic v. City of Grafton*, 339 N.W.2d 763, 765 (N.D.1983). *A & H Servs., Inc. v. City of Wahpeton*, 514 N.W.2d 855, 858 (N.D.1994). The limited nature of judicial oversight of the exercise of municipal authority is also shown in *Haugland v. City of Bismarck*, 429 N.W.2d 449, 453–54 (N.D.1988):

> In defining municipal powers, the rule of strict construction applies. *Lang v. City of Cavalier*, 59 N.D. 75, 228 N.W. 819 (1930). Once a municipality's powers have been determined, however, "the rule of strict construction no longer applies, and the manner and means of exercising those powers where not prescribed by the Legislature are left to the discretion of the municipal authorities." *Id.*, 228 N.W. at 822. Leaving the manner and means of exercising municipal powers to the discretion of municipal authorities implies a range of reasonableness within which a municipality's exercise of discretion will not be interfered with or upset by the judiciary. *See, e.g., Tayloe v. City of Wahpeton*, 62 N.W.2d 31, 35 (N.D.1953) (courts will

not declare ordinances invalid unless they are "clearly arbitrary, unreasonable and without relation to public health, safety, morals or public welfare."); *Marks v. City of Mandan*, 70 N.D. 474, 296 N.W. 39, 45 (1941) (reasonable exercise of legislative discretion "does not invade constitutional rights of general taxpayers"); 62 C.J.S. *Municipal Corporations* § 203, pp. 378–379 (1949) ("As a general rule, the reasonableness of municipal action is subject to review and inquiry by the courts.... While courts are reluctant to declare municipal regulations or other acts invalid by reason of their unreasonableness, ..., when such unreasonableness clearly appears, the courts may declare them invalid.").

[¶ 9] This case requires a determination of what the ordinance means. We interpret ordinances like we do statutes. *City of Fargo v. Ness*, 551 N.W.2d 790, 792 (N.D.1996); *Fairmount Twp. Bd. of Supervisors v. Beardmore*, 431 N.W.2d 292, 294 (N.D.1988). "Statutory interpretation is a question of law subject to full review upon appeal." *Harter v. North Dakota Dep't of Transp.*, 2005 ND 70, ¶ 7, 694 N.W.2d 677. "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained." N.D.C.C. § 1–02–02. "When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. " 'In construing a statute, our duty is to ascertain the Legislature's intent, which initially must be sought from the statutory language itself, giving it its plain, ordinary, and commonly understood meaning. We construe statutes as a whole and harmonize them to give meaning to related provisions.' " *Larson v. Larson*, 2005 ND 67,

¶ 8, 694 N.W.2d 13 (quoting *Boumont v. Boumont,* 2005 ND 20, ¶ 8, 691 N.W.2d 278 (citations omitted)). "We will ordinarily defer to a reasonable interpretation of a statute by the agency enforcing it, but an interpretation which contradicts clear and unambiguous statutory language is not reasonable." *Lee v. North Dakota Workers Comp. Bureau,* 1998 ND 218, ¶ 11, 587 N.W.2d 423.

### III

■■■ [¶ 10] The district court ruled that Minot must place "interest accumulated from NAWS revenues ... in the NAWS Fund" and could not place it in its general fund. Minot contends the ordinance *"does not mandate that interest earned by temporarily invested NAWS tax receipts must become part of the NAWS Fund,"* arguing its past history of putting all of its interest income, with minor exceptions, in its general fund and equipment purchase fund and its adoption of budgets for 2000 and 2001 that did not apportion any interest earned from NAWS investments to the NAWS fund, shows its legislative intent was not to apportion interest earnings to the NAWS fund.

[¶ 11] We conclude that the construction of the ordinance advocated by Minot is unreasonable. Section 3 of the ordinance requires that "[t]he revenues generated by the municipal water supply improvements surtax ... shall be expended exclusively to make improvements to the municipal water supply." Section 4(c)(2) of the ordinance provides that in determining when to terminate the surtax, the Finance Director is "directed to take into account ... the earnings likely to be derived from the tax proceeds set aside to make future cash payments during such time as it is possible to accomplish such set-aside." Clearly, interest constitutes revenues and earnings. The language used cannot reasonably be construed to permit interest earnings on surtax receipts to be expended for purposes other than improvements to Minot's water supply. If Minot intended to allow interest on surtax receipts to be expended for other things when it drafted the ordinance, it would have used less inclusive terms than revenues and earnings. We conclude Minot acted unreasonably in construing and applying Ordinance No. 3560, and we conclude the district court did not err in determining that "interest accumulated from NAWS revenues must be placed in the NAWS Fund."

### IV

■■■ [¶ 12] The district court determined that Minot had discretion to use NAWS funds to improve its water treatment plant. Section 3 of the ordinance provides, in part:

The revenues generated by the municipal water supply improvements surtax ... shall be expended exclusively to make improvements [defined in § 1 of the ordinance as any measure that enhances Minot's water supply, including treatment facilities] to the municipal water supply ... through the ... Project [defined in § 1 of the ordinance as "the Northwest Area Water Supply (NAWS) Project"] ... or, failing that, through any prudent and reasonable means to the same end.

Minot's construction of the ordinance is reasonable and not subject to judicial substitution under *A & H Servs., Inc. v. City of Wahpeton,* 514 N.W.2d 855, 858 (N.D. 1994). Minot's use of revenues generated by the water supply improvements surtax to improve its water treatment plant falls within the "range of reasonableness within which a municipality's exercise of discretion will not be interfered with or upset by the judiciary." *Haugland v. City of Bismarck,* 429 N.W.2d 449, 454 (N.D.1988).

We conclude the district court did not err in determining Minot had discretion to use NAWS funds to improve its water treatment plant.

## V

[¶ 13] In apportioning sales tax revenue due to pre–2000 retail sales to an earlier arena project and post–1999 retail sales for the water improvement surtax, Minot estimated the amounts by extrapolating from its experience with the prior arena tax. The district court ruled Minot "must obtain an exact accounting from the State in order to determine the amount of money intended for the NAWS Fund and the amount of money intended for the Arena Fund." The district court also ruled that, with regard to administrative fees incurred in the collection of Minot's sales taxes, "an accounting must occur to determine whether the appropriate amount of money was returned to the NAWS Fund."

[¶ 14] Minot contends that its extrapolation from prior experience with the Arena Fund was an appropriate method of allocating tax receipts. We agree. Minot's allocation by extrapolation from prior experience falls within the range of reasonableness envisioned in *Haugland,* 429 N.W.2d at 454. We conclude the district court erred in ruling Minot must get an exact accounting from the State and that there must be an accounting to determine if the appropriate amount was returned to the NAWS fund, and the judgment must be reversed on that aspect. However, with regard to Minot's estimate for allocating the tax receipts by extrapolating from prior experience and the charge for administering the tax, the GO Committee stated in its principal brief:

> We note that since the parties have agreed that the amount returned to the NAWS Fund regarding these two issues is the correct amount and as such this

was not an issue at the hearing for accounting, Issue 2 may therefore be moot.

Minot has not disputed that statement and we need not further address this issue.

## VI

[¶ 15] We conclude the other issues raised in the cross-appeal are without merit and no productive purpose would be served by addressing them.

## VII

[¶ 16] The judgment and orders appealed from are reversed to the extent Minot has been required to get an exact accounting from the State in determining the amount of money intended for the NAWS fund and the amount intended for the Arena Fund, and are otherwise affirmed.

[¶ 17] GERALD W. VANDE WALLE, C.J., BENNY A. GRAFF, S.J., and CAROL RONNING KAPSNER, J., concur.

[¶ 18] The Honorable BENNY A. GRAFF, S.J., sitting in place of SANDSTROM, J., disqualified.

[¶ 19] The Honorable DANIEL J. CROTHERS did not participate in this decision.