2006 ND 198

**Laura SANDBERG, Plaintiff and Appellant**

v.

**AMERICAN FAMILY INSURANCE COMPANY, Defendant and Appellee.**

No. 20050396.

Supreme Court of North Dakota.

Sept. 14, 2006.

Jeffrey S. Weikum, Pagel Weikum Law Firm, Bismarck, N.D., for plaintiff and appellant.

Lawrence E. King, Zuger Kirmis & Smith, Bismarck, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1] Laura Sandberg appeals from a summary judgment dismissing her action for uninsured motorist coverage against her uninsured motor vehicle insurer, American Family Insurance Company. We conclude American Family was not adversely affected by Sandberg's settlement with Workforce Safety and Insurance ("WSI"), and there are disputed issues of material fact regarding American Family's statutory right to reduce damages payable to Sandberg for uninsured motorist coverage by the amount paid or payable to her for workers' compensation benefits. We reverse and remand.

I

[¶ 2] In April 1999, Sandberg was employed as a loss prevention officer for Wal–Mart. She was injured in a motor vehicle-pedestrian accident during the course of her employment, while attempting to stop a suspected shoplifter from leaving the Wal–Mart parking lot in a motor vehicle. She initially received benefits for her injury from WSI; however, WSI subsequently determined Sandberg had misrepresented her physical condition and made false statements to WSI regarding her claim. In September 2000, WSI ordered that Sandberg forfeit all future benefits in connection with her claim and repay $4,108.33 in previously paid benefits. Sandberg did not appeal that decision, and in April 2001, without obtaining American Family's consent, she executed a settlement with WSI in which she agreed to a "full and complete settlement" of all future workers' compensation benefits and WSI agreed not to pursue collection of any previously paid benefits unless Sandberg received a settlement in a third-party action. Under the agreement, WSI "retain[ed] its subrogated interest in [Sandberg's] third

party action for all benefits paid on [her] claim" under N.D.C.C. § 65–01–09.

[¶ 3]  Neither the driver nor the vehicle involved in the accident had motor vehicle liability insurance, and Sandberg thereafter sought uninsured motorist coverage under her policy with American Family. American Family denied her claim, and she sued American Family for breach of contract and bad faith.  The district court concluded Sandberg was not entitled to uninsured motorist coverage under N.D.C.C. § 26.1–40–15.6(7) and her policy with American Family, because she had not obtained American Family's consent to the settlement with WSI and the settlement adversely affected American Family. The court thereafter granted summary judgment dismissing Sandberg's action against American Family.

## II

[¶ 4]  We review this appeal in the posture of summary judgment, which is a procedure for promptly resolving a controversy on the merits without a trial if there are no disputed issues of material fact or inferences that reasonably can be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Ernst v. Acuity*, 2005 ND 179, ¶ 7, 704 N.W.2d 869.  A party moving for summary judgment must show there are no disputed issues of material fact.  *Green v. Mid Dakota Clinic*, 2004 ND 12, ¶ 5, 673 N.W.2d 257.  On appeal, we view the evidence in the light most favorable to the opposing party, and that party must be given the benefit of all favorable inferences. *Hurt v. Freeland*, 1999 ND 12, ¶ 7, 589 N.W.2d 551.  Whether a district court properly granted summary judgment is a question of law that we review de novo on the entire record. *Ernst*, at ¶ 7.

## III

[¶ 5]  Sandberg argues her settlement with WSI does not preclude her from pursuing a claim for uninsured motorist coverage against American Family.  She argues WSI is not a person who may be legally liable for her injuries and her settlement with WSI did not adversely affect American Family under N.D.C.C. § 26.1–40–15.6(7).

[¶ 6]  American Family's policy with Sandberg allows the limits of her uninsured coverage to be reduced by "[a] payment made or amount payable because of bodily injury under any workers' compensation or disability benefits law or any similar law."  The policy also provides that the uninsured coverage "does not apply to bodily injury to a person . . . [w]ho makes or whose legal representative makes a settlement without [American Family's] written consent."

[¶ 7]  Our statutory provisions for uninsured and underinsured coverage are contained in N.D.C.C. §§ 26.1–40–15.1 through 26.1–40–15.7, and include language more restrictive than American Family's policy with Sandberg.  Section 26.1–40–15.4(1)(a), N.D.C.C., provides that "[a]ny damages payable to or for any insured for uninsured or underinsured motorist coverage must be reduced by: . . . [t]he amount paid, or payable under any workers' compensation or other similar law, exclusive of nonoccupational disability benefits."  Section 26.1–40–15.6(7), N.D.C.C., provides that "uninsured and underinsured coverages . . . do not apply to bodily injury, sickness, disease, or death resulting therefrom of an insured . . . [w]hen the insured, without the written consent of the insurer, shall make any agreement or settlement with any person who may be legally liable therefor, if such agreement adversely affects the rights of the insurer."

[¶ 8] Those statutory provisions for uninsured motorist coverage require that an unauthorized settlement adversely affect the insurer and are part of American Family's uninsured coverage with Sandberg. *See Milbank Mut. Ins. Co. v. Dairyland Ins. Co.*, 373 N.W.2d 888, 891–92 (N.D.1985); *Richard v. Fliflet*, 370 N.W.2d 528, 534–35 (N.D.1985). Uninsured motorist coverage is essentially a function of statute just like underinsured motorist coverage. *See Score v. American Family Mut. Ins. Co.*, 538 N.W.2d 206, 209 (N.D.1995). Sections 26.1–40–15.1 to 26.1–40–15.7, N.D.C.C., outline the current minimum statutory requirements for uninsured motorist coverage. An insurer may provide coverage terms more favorable to its insured than are required by N.D.C.C. §§ 26.1–40–15.1 to 26.1–40–15.7, but not less favorable. N.D.C.C. § 26.1–40–15.7(5). *See DeCoteau v. Nodak Mut. Ins. Co.*, 2000 ND 3, ¶ 17, 603 N.W.2d 906. The minimum scope of coverage provided under the contract of insurance, and our analysis of the issues raised in this appeal, is therefore controlled by the statutory language.

[¶ 9] Statutory interpretation is a question of law, fully reviewable on appeal. *GO Comm. ex rel. Hale v. City of Minot*, 2005 ND 136, ¶ 9, 701 N.W.2d 865. The primary objective in interpreting a statute is to determine the legislature's intent. *Amerada Hess Corp. v. State ex rel. Tax Comm'r*, 2005 ND 155, ¶ 12, 704 N.W.2d 8. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. The language of a statute must be interpreted in context and according to the rules of grammar, giving meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1–02–03 and 1–02–38(2). We construe statutes to give effect to all of the provisions, so that no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1–02–38(2) and (4).

[¶ 10] The plain language of N.D.C.C. § 26.1–40–15.6(7) provides that uninsured coverage does not apply when the insured, without the written consent of the insurer, makes any agreement or settlement with any person who may be legally liable for the insured's bodily injury, sickness, disease, or death if the agreement adversely affects the rights of the insurer. Generally, consent-to-settlement language like N.D.C.C. § 26.1–40–15.6(7) allows an insurer to avoid its obligation to provide uninsured motorist coverage to an insured when the insured makes an unauthorized settlement with an uninsured tortfeasor, or with insured tortfeasors or their insurance carriers in accidents involving multiple tortfeasors, because the insurer has a right of subrogation against those entities and the insured's unauthorized settlement operates as a release of the insurer's subrogation rights. *See* 2 Allan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance* §§ 17.2 and 18.2 (3d ed.2005); 9 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 124:6 (3d ed.2005).

[¶ 11] American Family does not claim it has a right of subrogation under N.D.C.C. § 26.1–40–15.5, but that the settlement with WSI adversely affected its rights because WSI would be liable for future medical expenses, disability benefits and potentially a permanent impairment award. The analysis of whether American Family was adversely affected therefore focuses on the meaning of "payable" under N.D.C.C. § 26.1–40–15.4. Sandberg argues "payable" does not include future workers'

compensation benefits. American Family argues "payable" includes Sandberg's future WSI benefits for the purpose of applying its statutory right to a reduction in uninsured motorist benefits payable under N.D.C.C. § 26.1–40–15.4(1)(a).

[¶ 12] Under N.D.C.C. § 26.1–40–15.4(1)(a) an insurer is given a statutory right to reduce any damages payable to the insured for uninsured motorist coverage by the amount "paid or payable" to the insured under any workers' compensation law. An insurer's right to reduce damages payable to the insured for uninsured motorist coverage by the amount paid or payable for workers' compensation is a right to a reduction in the amount paid to or for the insured, and not a right of subrogation against the person responsible for the loss. *See DeCoteau*, 2000 ND 3, ¶ 13, 603 N.W.2d 906 (holding N.D.C.C. § 26.1–40–15.4(1) was intended to permit an offset against damages payable for benefits paid under workers' compensation law and first party automobile coverage). In *DeCoteau*, our Court noted that the testimony of Thomas O. Smith, a representative of the insurance industry, reveals that "[Section 26.1–40–15.4(1) ] does not in any way reduce the amount of coverage that is available for either uninsured or underinsured motorist coverages. It only addresses how one deals with 'damages' in determining what amount the insurance company must pay under those coverages.... The only purpose of subsection 1 is to avoid a potential duplication for recovery of the same loss." *DeCoteau*, at ¶ 13.

[¶ 13] Under the plain language of N.D.C.C. § 26.1–40–15.4(1)(a), American Family is entitled to reduce the amount payable to Sandberg for uninsured motorist coverage by any amount paid or payable to her for workers' compensation benefits. WSI has paid Sandberg $4,108.33 in workers' compensation benefits, and

American Family is entitled to a reduction in that amount for any damages payable to Sandberg for uninsured motorist coverage. American Family is also entitled to a reduction for any amount "payable" to her for workers' compensation benefits. The plain and ordinary meaning of "payable" is an amount "that may, can, or must be paid." *Merriam–Websters Collegiate Dictionary* 910 (11th ed.2005). In the context of similar setoff language, "payable" has been defined as that which is presently owing or to be paid in the future, *see Cathey v. United States*, 35 F.Supp.2d 518, 521 (S.D.Tex.1998); *Coutts v. Wisconsin Ret. Bd.*, 209 Wis.2d 655, 562 N.W.2d 917, 923 (1997), or that which must or may be paid, or an amount that need only be capable of being paid. *See Rydingsword v. Liberty Mut. Ins. Co.*, 224 Conn. 8, 615 A.2d 1032, 1036–37 (1992) (confirming arbitration award for reduction of future workers' compensation benefits based on present value of those benefits). In this context, we construe "payable" to mean any workers' compensation benefits Sandberg would have been paid had WSI not ordered her to forfeit all future benefits in connection with her claim. To hold otherwise would, in essence, allow Sandberg a double recovery and would thwart the legislature's intent that workers' compensation is primary and uninsured coverage is secondary. Sandberg settled with WSI for all of her causally related losses and cannot seek double recovery.

[¶ 14] When N.D.C.C. § 26.1–40–15.4(1)(a) is construed together and harmonized with N.D.C.C. § 26.1–40–15.6(7), we conclude an insured's unauthorized settlement with WSI does not adversely affect the insurer because, notwithstanding the settlement with WSI, the insurer retains its statutory right to reduce the damages payable to the insured for uninsured coverage by the amount paid or payable to the insured under workers'

compensation law. Sandberg's unauthorized settlement with WSI does not preclude American Family from obtaining a reduction in the amount payable to Sandberg for uninsured motorist coverage by the amount paid or payable to her under any workers' compensation law. We therefore conclude American Family has not been adversely affected by her settlement with WSI, and the district court erred in deciding Sandberg's settlement with WSI adversely affected American Family. Because we conclude Sandberg's settlement with WSI did not adversely affect American Family's right to reduce its damages payable to Sandberg for uninsured coverage by any amounts paid or payable to her by WSI, we need not decide if WSI is a "person who may be legally liable" for her injuries under N.D.C.C. § 26.1–40–15.6(7).

[¶ 15] There are unresolved factual issues regarding the extent of Sandberg's injuries caused by the accident, and the record does not establish the amount of workers' compensation benefits she would have been paid. We conclude resolution of those issues is inappropriate for summary judgment. We therefore remand for Sandberg's action against American Family to proceed to trial. If Sandberg is successful and awarded damages on special interrogatories for past and future losses, American Family can then move the court to reduce those damages by the amounts which would be paid or payable under the workers' compensation statutes. The court must then determine the appropriate reduction for workers' compensation benefits paid or payable and subtract the amount from the damages payable for uninsured motorist coverage by American Family.

IV

[¶ 16] We reverse the summary judgment and remand for further proceedings consistent with this opinion.

[¶ 17] GERALD W. VANDE WALLE, C.J., WADE L. WEBB, D.J., and CAROL RONNING KAPSNER, J., concur.

[¶ 18] The Honorable WADE L. WEBB, D.J., sitting in place of SANDSTROM, J., disqualified.

CROTHERS, Justice, concurring specially.

[¶ 19] I specially concur. I agree with the result in this case, but write separately to express respectful concern about the excessive scope in paragraph 10 regarding subrogation, the excessive scope in paragraph 12 regarding legislative history and reduction of coverage, and the apparent blanket conclusion in paragraph 14 that an insurer could never be prejudiced by an unauthorized settlement with WSI.

[¶ 20] Our law proscribes advisory opinions. *See Bies v. Obregon,* 1997 ND 18, ¶¶ 9–10, 558 N.W.2d 855. This rule exists so that we do not appear to decide collateral matters or matters academically interesting but unnecessary for resolution of the pending case. The rationale underpinning this rule is based on our adversarial system and the idea that competently presented competing claims will secure the truth and lead to "the just, speedy, and inexpensive determination of every action." N.D.R.Civ.P. 1. *See Risch v. North Dakota Workers Compensation Bureau,* 447 N.W.2d 308, 312 (N.D.1989) (Meschke, J., concurring) (dicta is "neither dictated by the facts of the cases decided nor derived from adversary presentations"). Stating an apparent conclusion without a controversy pending before the court exposes the judiciary to the danger of improvidently deciding issues and of not sufficiently contemplating ramifications of the opinion. *See, e.g., Hovland v. City of Grand Forks,* 1997 ND 95, ¶ 8, 563 N.W.2d 384 ("[the

previous] court's discussion of N.D.C.C. ch. 53–08 is a dictum, and we are not compelled by stare decisis to follow it here") and *Olson v. Bismarck Parks and Rec. Dist.*, 2002 ND 61, ¶ 13, 642 N.W.2d 864 ("These statements are dicta, and we are not compelled by stare decisis to follow them. We do not follow the path outlined in the *Hovland* dicta here because, under the circumstance of this case, we believe there is a close correspondence between the statutory classification and the legislative goals." (Internal citation omitted.)).

[¶ 21] Because dicta need not be followed in subsequent cases, inclusion of dicta may have the unsalutary effect of misleading judges and lawyers, and may result in litigants incurring considerable expense funding fruitless arguments before the district courts and on appeal. Here, neither I nor the majority knows whether the majority's dicta will lead to untoward results. But the danger can be avoided by narrowing the scope of the opinion in this case. The majority has not done so, and I therefore respectfully concur in the result only.

[¶ 22] Daniel J. Crothers