Filed 12/13/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 230

Tracy Jund and Lisa Jund, Plaintiffs and Appellees

v.

Johnnie B’s Bar & Grill, Inc., Defendant

and

Ransom County, Defendant and Appellant

No. 20110115

Appeal from the District Court of Ransom County, Southeast Judicial District, the Honorable Thomas E. Merrick, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Kim E. Brust (argued), P.O. Box 2686, Fargo, N.D. 58108-2686, for plaintiffs and appellees.

Daniel Lee Gaustad (argued) and Ronald F. Fischer (on brief), P.O. Box 5758, Grand Forks, N.D. 58206-5758, for defendant and appellant.

Jund v. Johnnie B’s Bar & Grill

No. 20110115

Sandstrom, Justice.

[¶1] Ransom County appeals from a summary judgment that awarded Tracy and Lisa Jund the $250,000 coverage limit of Ransom County’s underinsured motorist coverage.  The issue in this appeal involves the meaning of language in N.D.C.C. § 26.1-40-15.4(1) that “[a]ny damages payable to or for any insured for . . . underinsured motorist coverage must be reduced by” the amounts payable under any Workforce Safety and Insurance (“WSI”) law.  The district court construed that language to authorize a reduction for WSI benefits payable to Tracy Jund from the Junds’ total compensatory damages, not from Ransom County’s underinsured motorist coverage limit.  We affirm.

I

[¶2] The Junds sued Johnnie B’s Bar & Grill and Ransom County, alleging Tracy Jund was injured during the course of his employment as a Ransom County Deputy Sheriff when his patrol car was involved in an accident with an underinsured motor vehicle driven by Shane Reinhardt, an individual the Junds alleged had unlawfully consumed alcoholic beverages at Johnnie B’s.  The Junds alleged Ransom County, as a pool member of the North Dakota Insurance Reserve Fund, provided underinsured motorist coverage for the patrol car and was liable to the Junds for $250,000 in underinsured benefits under the limits of its underinsured motorist coverage.  For summary judgment purposes, the Junds and Ransom County stipulated that Reinhardt’s car was underinsured; that Tracy Jund, individually and as trustee for WSI, and Lisa Jund had recovered $100,000 in coverage limits from Reinhardt’s liability insurer; that the Junds had been paid $109,680.91 in benefits from WSI; and that the Junds’ total compensatory damages for the accident exceeded the sum of the $100,000 received from Reinhardt’s liability insurer, the $109,680.91 in benefits payable from WSI, and the $250,000 coverage limit from Ransom County’s underinsured motorist coverage.  

[¶3] The district court granted the Junds’ motion for summary judgment, concluding N.D.C.C. § 26.1-40-15.4(1) is ambiguous.  The court construed the statute to authorize a reduction for WSI benefits payable to Tracy Jund from the Junds’ total compensatory damages, rather than from Ransom County’s underinsured motorist coverage limit.  The court said that interpretation provides an insured with additional protection when injured by a driver with a liability limit that is too low to fully compensate the insured for all injuries and permits an offset against damages for benefits paid under workers compensation and first-party automobile coverage while avoiding duplication of recovery for the same loss.  The court further explained that “interpretation honors the mandate of N.D.C.C. § 26.1-40-15.3(1) that underinsured motorist coverage must pay compensatory damages which an insured is legally entitled to collect for bodily injury from the owner or operator of an underinsured motor vehicle, and also enforces the limiting language of N.D.C.C. § 26.1-40-15.3.”  The court decided the Junds were entitled to the underinsured coverage limit of $250,000 under Ransom County’s motor vehicle insurance.  The court also decided there was no just reason under N.D.R.Civ.P. 54(b) to delay entry of judgment against Ransom County.  

[¶4] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  Ransom County’s appeal is timely under N.D.R.App.P. 4(a).  After Ransom County filed its notice of appeal, the Junds and Johnnie B’s stipulated to dismiss on the merits and with prejudice the Junds’ remaining claim against Johnnie B’s.  All of the Junds’ claims against Ransom County and Johnnie B’s have been finally resolved for purposes of N.D.R.Civ.P. 54(b), and this Court has jurisdiction over Ransom County’s appeal under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-01.  

II

[¶5] We review the issues raised in this appeal in the posture of summary judgment, which is a procedural device for promptly resolving claims on the merits without a trial if there are no disputed issues of material fact or inferences that reasonably can be drawn from the undisputed facts, or if the only issues to be resolved are questions of law.  
Johnson v. Nodak Mut. Ins. Co.
, 2005 ND 112, ¶ 9, 699 N.W.2d 45.  A party moving for summary judgment must show there are no disputed issues of material fact and the case is appropriate for judgment as a matter of law.  
Green v. Mid Dakota Clinic
, 2004 ND 12, ¶ 5, 673 N.W.2d 257.  On appeal, we view the evidence in the light most favorable to the opposing party and give that party the benefit of all favorable inferences.  
Hurt v. Freeland
, 1999 ND 12, ¶ 7, 589 N.W.2d 551.  Whether a district court properly granted summary judgment is a question of law that we review de novo on the entire record.  
Johnson
, at ¶ 9.

III

[¶6] Ransom County argues the district court erred in deciding the amount of the Junds’ total compensatory damages, rather than Ransom County’s underinsured motorist coverage limit, is the starting point under N.D.C.C. § 26.1-40-15.4(1)(a) for reducing “[a]ny damages payable to or for any insured for . . . underinsured motorist coverage” by the amount paid or payable to the Junds for WSI benefits.  Ransom County asserts the court’s interpretation ignores the phrase “for . . . underinsured motorist coverage” in N.D.C.C. § 26.1-40-15.4(1)(a) and results in a failure to harmonize that statute with other underinsured motorist statutes.  Ransom County claims the plain meaning of “for” is “because of,” or “on account of,” or “in consequence of,” and the only damages payable to the Junds because of, or on account of, or in consequence of underinsured motorist coverage is the maximum liability amount established by N.D.C.C. § 26.1-40-15.3, which Ransom County claims sets the starting point for that reduction at  the policy limit of $250,000.  Ransom County claims its interpretation complies with the underlying purpose of underinsured motorist coverage to place the insured in the same position the insured would have been in if the tortfeasor had liability insurance equal to the insured’s underinsured motorist coverage.  

[¶7] Sections 26.1-40-15.1 to 26.1-40-15.7, N.D.C.C., outline the minimum statutory requirements for underinsured motorist coverage in North Dakota, but an insurer may provide the insured with greater coverage.  
See
 N.D.C.C. § 26.1-40-

15.7(5); 
Sandberg v. American Fam. Ins.
, 2006 ND 198, ¶ 8, 722 N.W.2d 359; 
DeCoteau v. Nodak Mut. Ins. Co.
, 2000 ND 3, ¶ 17, 603 N.W.2d 906.  Here the parties do not contend that Ransom County’s underinsured motorist coverage provides greater coverage than required by statute, and the resolution of the issues raised in this appeal requires a description of the statutory scheme for underinsured motorist coverage.

[¶8] Section 26.1-40-15.1(2), N.D.C.C., defines an “underinsured motor vehicle” as a motor vehicle with a bodily injury liability insurance policy in effect at the time of an accident with a limit that is less than the insured’s underinsured motorist coverage limit, or that has been reduced by payments to other persons injured in the accident to an amount less than the insured’s underinsured limit.  Under N.D.C.C. § 26.1-40-15.3(1), “[u]nderinsured motorist coverage must pay compensatory damages which an insured is legally entitled to collect for bodily injury . . . from the owner or operator of an underinsured motor vehicle arising out of the ownership, maintenance, or use of [the] underinsured motor vehicle.” The maximum liability for underinsured motorist coverage is the lower of the amount of compensatory damages established but not recovered from the person legally liable for the bodily injury, or the limits of liability of the underinsured motorist coverage.  N.D.C.C. § 26.1-40-

15.3(2).  Section 26.1-40-15.4, N.D.C.C., deals with other insurance and priority of payments, and the issue in this case involves the meaning of the reducing language of subsection one, which 
provides:

Any damages payable to or for any insured for uninsured or underinsured motorist coverage must be reduced by:

a. The amount paid, or payable under any workforce safety and insurance or other similar law, exclusive of nonoccupational disability benefits; and

b. Amounts paid or payable under any valid and collectible motor vehicle medical payments, personal injury protection insurance, or similar motor vehicle coverages.

[¶9] Statutory interpretation is a question of law, fully reviewable on appeal.  
GO Comm. ex rel. Hale v. City of Minot
, 2005 ND 136, ¶ 9, 701 N.W.2d 865.  Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02.  Statutes are construed as a whole and, if possible, are harmonized to give meaning to related provisions.  N.D.C.C. § 1-02-07.  If the language of a statute is clear and unambiguous, “the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit.”  N.D.C.C. § 1-02-05.  The language of a statute must be interpreted in context and according to the rules of grammar.  N.D.C.C. § 1-02-03.  It is presumed that the “entire statute is intended to be effective.”  N.D.C.C. § 1-02-

38(2).  We presume the legislature did not intend an unreasonable result or unjust consequences. N.D.C.C. § 1-02-38(3).  A statute is ambiguous if it is susceptible to different, rational meanings.  
Amerada Hess Corp. v. State ex rel. Tax Comm’r
, 2005 ND 155, ¶ 12, 704 N.W.2d 8.  If the language of a statute is ambiguous, a court may consider the object sought to be attained, former statutory provisions, and legislative history to determine the intention of the legislation.  N.D.C.C. §  1-02-39.

[¶10] In 
DeCoteau
, 2000 ND 3, ¶ 8, 603 N.W.2d 906 (quoting 
North River Ins. Co. v. Tabor
, 934 F.2d 461, 464 (3d Cir. 1991)), we described two types of underinsured motorist coverage, “gap” or “difference-in-limits” coverage and “excess” coverage, and we explained the differences between those types of coverages:

[Gap or difference-in-limits] coverage places the insured party in the same position that he would have been in had the tortfeasor carried liability insurance in the amount of the insured’s underinsured motorist policy limit.  Under this “gap” theory of underinsured motorist coverage—so-called because the coverage merely fills the “gap” between the tortfeasor’s liability coverage and the injured party’s underinsured motorist coverage, a driver is considered “underinsured” when his liability coverage does not at least equal 
the uninsured/underinsured coverage carried
 by the injured insured.

Under [excess coverage], underinsured motorist coverage supplies a fund for full compensation to the injured insured and thus the insured is entitled to compensation from his insurer regardless of any recovery obtained from other sources.  The insured may therefore recover underinsured motorist benefits until his policy limits are reached or he is fully compensated for his damages, whichever comes first.  Under this “excess” theory of underinsured motorist coverage—
i.e.
, the injured insured’s coverage being reckoned as “excess” over and above the liability policy of the tortfeasor, a tortfeasor is “underinsured” when his liability coverage does not at least equal 
the damages suffered
 by the injured insured.

[¶11] In 
DeCoteau
, 2000 ND 3, ¶ 9, 603 N.W.2d 906, we discussed the history of  underinsured motorist coverage in North Dakota and explained that the 1987 legislature enacted mandatory difference-in-limits coverage.  
See
 1987 N.D. Sess. Laws ch. 369.  The 1989 legislature amended the mandatary minimum requirements for underinsured motorist coverage, and the relevant statutory language has not been changed since then.  
See
 1989 N.D. Sess. Laws ch. 375; 
DeCoteau
, at ¶¶ 10-16.  The 1989 legislature removed language authorizing difference-in-limits coverage from what became N.D.C.C. § 26.1-40-15.3(2) during the legislative process and adopted excess coverage if the tortfeasor’s vehicle satisfied the definition of an underinsured vehicle.  
DeCoteau
, at ¶ 12.  
See
 N.D.C.C. §§ 26.1-40-15.1(2) and 26.1-40-15.3(2).  We explained the change was intended “to make insureds ‘whole’ by allowing them to recover underinsured benefits until their policy limits are reached or they are fully compensated for their injuries.”  
DeCoteau
, at ¶ 12 (citing 
Hearing on H.B. 1155 Before the Conference Committee on Industry, Business, and Labor
, 51st N.D. Legis. Sess. (April 4, 1989) (testimony of Senators David Nething and Larry Schoenwald)).  
See
 
Score v. American Fam. Mut. Ins. Co.
, 538 N.W.2d 206, 209 n.2 (N.D. 1995) (construing underinsured policy language under 1987 statutes for difference-in-limits coverage and stating 1989 statutory provisions retain same definition of underinsured vehicle but “appear to require excess coverage if the vehicle is underinsured”).  We further explained that N.D.C.C. § 26.1-40-15.4(1) “was intended to permit an offset against damages payable for benefits paid under workers compensation law and first party automobile coverage,” and “was not intended to allow reductions for third-party liability coverage.”  
DeCoteau
, at ¶ 13.  We said, “The only purpose of [N.D.C.C. § 26.1-40-15.4(1)] is to avoid a potential duplication for recovery of the same loss.”  
DeCoteau
, at ¶ 13 (quoting 
Hearing on H.B. 1155 Before the Conference Committee on Industry, Business, and Labor
, 51st N.D. Legis. Sess (April 4 and 7, 1989) (prepared testimony of Thomas O. Smith, pp. 4-5)).  

[¶12] Under our statutes and 
DeCoteau
, we reject Ransom County’s argument that the plain meaning of “for” in N.D.C.C. § 26.1-40-15.4(1) means “because of,” or “in consequence of,” or “on account of.”  Ransom County’s argument essentially construes “for” to mean “under” and requires a reduction from the insured’s underinsured motorist coverage rather than from the insured’s total compensatory damages.  Although one definition of “for” is “because,” another prominent definition is a function word to indicate the purpose.  
Meriam-Webster’s Collegiate Dictionary
 488 (11th ed. 2005).  That definition of “for” suggests a reference to the subject of underinsured motorist coverage but does not expressly identify a starting point of underinsured motorist coverage for the applicable reductions.  The legislature used the phrase “maximum liability of underinsured motorist coverage” and “limits of liability of the underinsured motorist coverage” in N.D.C.C. § 26.1-40-15.3(2), but did not use either of those phrases for the reducing provisions in N.D.C.C. § 26.1-40-

15.4(1).  Rather, the legislature used the phrase “[a]ny damages.”  We agree with the district court that the reducing language of N.D.C.C. § 26.1-40-15.4(1) is not clear regarding the starting point for the applicable reductions.  We conclude the statute is susceptible to different, rational meanings and is ambiguous.  We therefore consider the object sought to be attained, former statutory provisions, and legislative history to determine the intention of the legislation.  N.D.C.C. § 1-02-39.

[¶13] The 1989 legislative history provides additional background for the purpose of the 1989 legislation, including a conference committee report to the House Industry, Business, and Labor Committee, which indicates that if underinsured motorist coverage is triggered under the definition of an underinsured motor vehicle, the insured is entitled to the limit of underinsured coverage available without an offset.  
Hearing on H.B. 1155 Before the Conference Committee on Industry, Business, and Labor
, 51st N.D. Legis. Sess. (April 4 and 7, 1989) (H.B. 1155, 
Report to House IBL Conference Committee on Engrossed H.B. 1155
).  The report states an “intent to amend (if necessary) the wording of engrossed bill HB 1155 so that when an insured qualified for underinsured motorists coverage, his policy would respond to the full limit of his coverage and not ‘be diminished by an offset’ which reduces the actual limit available to the insured.”  
Id.
  The report further explains the “‘key’ to interpreting when the underinsured motorist coverage is ‘triggered’ is found in the definition” of an underinsured motor vehicle, which “clearly sets forth specific requirements for determining what constitutes or ‘triggers’ an underinsured motorist claim.”  
Id.
  The legislative history and this Court’s decision in 
DeCoteau
, 2000 ND 3, ¶ 13, 603 N.W.2d 906 (quoting prepared testimony by Thomas O. Smith), reflect the “only purpose of [N.D.C.C. § 26.1-40-15.4(1)] is to avoid potential duplication for recovery of the same loss.”  Additional statements in the legislative history reflect  an objective to make the insured “whole.” 
Conference Committee Hearing on H.B. 1155 Before the Conference Committee on Industry, Business, and Labor
, 51st N.D. Legis. Sess. (April 4, 1989) (testimony of Senator David Nething).

[¶14] The legislative history reflects the purpose of the 1989 amendments to underinsured motorist coverage was to provide excess coverage to make insured’s whole, and not, as argued by Ransom County, to place an insured in the same position the insured would have been in if the tortfeasor had liability insurance equal to the insured’s underinsured motorist coverage, which is an underlying purpose of “gap” or “difference-in-limits” coverage.  In 
DeCoteau
, 2000 ND 3, ¶¶ 8, 12, 14, 603 N.W.2d 906, we explained the distinction between “gap” or “difference-in-limits” coverage and “excess” coverage, and we said the 1989 legislation changed North Dakota’s “gap” coverage to “excess” coverage to reflect the legislative purpose of making insureds “whole.”  
DeCoteau
 does not support the idea that the purpose of our statutory provisions for underinsured motorist coverage is to place the insured in the same position the insured would have been in if the tortfeasor had liability insurance equal to the insured’s underinsured coverage.  Rather, 
DeCoteau
, at ¶ 15, explicitly recognizes the 1989 legislature retained the definition for an underinsured motorist, which governs the threshold issue of whether an underinsured motor vehicle is involved, “to alleviate concerns about requiring insurers to open a claim file whenever insureds’ underinsured coverage was the same as a tortfeasor’s liability coverage.”  The retention of that definition as a trigger for underinsured motorist coverage to address that concern does not vitiate other 1989 amendments that changed “gap” coverage to “excess” coverage to make insureds “whole.”  
DeCoteau
, at ¶¶ 12, 14-15.

[¶15] The purpose of making insureds “whole” is furthered by construing the reducing language to authorize a reduction from compensatory damages rather than from the underinsured motorist coverage limit as long as the insured does not duplicate recovery for the same loss.  That purpose would be frustrated for WSI benefits, because WSI has a subrogation right against a tortfeasor for “fifty percent of the damages recovered up to a maximum of the total amount it has paid or would otherwise pay.”  N.D.C.C. § 65-01-09.  In view of that subrogation right, construing N.D.C.C. § 26.1-40-15.4(1) as argued by Ransom County would further diminish the legislature’s purpose of making the insured “whole.” 

[¶16] Our decision in 
Sandberg
, 2006 ND 198, 722 N.W.2d 359, does not support Ransom County’s argument.  In 
Sandberg
, at ¶ 5, we considered issues about an insurer’s statutory right to a reduction of uninsured benefits because an insured settled a claim with WSI and whether the insurer was adversely affected by the insured’s unauthorized settlement with WSI.  We construed N.D.C.C. § 26.1-40-15.4(1)(a) together with N.D.C.C. § 26.1-40-15.6(7), and we held “ an insured’s unauthorized settlement with WSI does not adversely affect the insurer because, notwithstanding the settlement with WSI, the insurer retains its statutory right to reduce the damages payable to the insured for uninsured coverage by the amount paid or payable to the insured under workers’ compensation law.”  
Sandberg
, at ¶ 14.  In 
Sandberg
, we generally discussed the mechanics for the reduction of WSI benefits from damages to avoid a potential duplication of recovery for the same loss, and we did not hold that the reduction was from the limits of uninsured motorist coverage.  
Sandberg
 does not require a reduction from Ransom County’s underinsured motorist coverage limit.

[¶17] We conclude that our decision in 
DeCoteau
, the language of N.D.C.C. § 26.1-

40-15.4(1), construed with the other provisions for underinsured motorist coverage in N.D.C.C. §§ 26.1-40-15.1(2) and 26.1-40-15.3, and the legislative history addressing the purpose of those statutes support the district court’s interpretation of the reducing language of N.D.C.C. § 26.1-40-15.4(1), and we construe that language to require the reduction for benefits paid or payable under any WSI law from the insured’s total compensable damages and not from the insured’s underinsured motorist coverage limit.

IV

[¶18] We affirm the summary judgment.

[¶19] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.