2016 ND 45

Amy HILTNER, Plaintiff

v.

OWNERS INSURANCE COMPANY, Defendant.

No. 20140308.

Supreme Court of North Dakota.

Feb. 24, 2016.

Keith L. Miller, Moorhead, Minn., for plaintiff.

Michael J. Morley, Grand Forks, N.D., for defendant.

Tyler J. Siewert, Bismarck, N.D., for amicus curiae North Dakota Association for Justice.

McEVERS, Justice.

[¶ 1]  The United States District Court for the District of North Dakota certified the following question of law to this Court regarding the proper calculation of an offset provision to underinsured motorist coverage under North Dakota law:

Whether the court should deduct no-fault benefits from the award of past economic damages before reduction for the percentage of fault attributable to plaintiff and other parties for whose conduct the defendant is not responsible.

We answer the certified question, "No."

I

[¶ 2]  In 2010, Amy Hiltner was seriously injured when she fell off the trunk of a moving vehicle driven by Samantha Denault.  Denault's insurer paid Hiltner its liability limit under a policy covering the vehicle.  Owners Insurance Company provided underinsured coverage to Hiltner in an automobile policy issued to her father.  In 2012, Hiltner sued Owners in state court for underinsured motorist coverage benefits under North Dakota law, alleging she was injured as a result of driver Denault's negligent operation of the motor vehicle.  Owners removed the action from state court to the United States District Court in North Dakota.

[¶ 3]  Under N.D.R.App.P. 47, the United States District Court provided this Court with the following statement of facts for the certified question:

Amy Hiltner commenced this action for underinsured motorist benefits against Owners Insurance Company. Hiltner was injured when she fell off the trunk of a moving vehicle.  Following a bench trial, the Court apportioned fault as follows:

| | |
|---|---|
| Driver/Insured Samantha Denault | 55% |
| Passenger Joshua Jeffries | 25% |
| Plaintiff Amy Hiltner | 20% |

The Court awarded the following damages:

| | |
|---|---|
| Past Economic Damages | $101,874.69 |
| Future Economic Damages | $175,000.00 |
| Noneconomic Damages | $75,000.00 |

The parties have stipulated that $30,000.00 has been paid to [Hiltner] for automobile no-fault insurance medical expenses.  The parties dispute how the Court should apply the deduction.

[Hiltner] contends the no-fault benefits should be deducted from the past economic damages award and then fault apportioned according to the percentage of liability found by the Court, resulting in a net award of past economic damages in the amount of $39,531.08. [Owners] contends the past economic damages award should be apportioned according to the percentage of liability found by the Court and then the no-fault benefits should be deducted from the past economic damages award, resulting in a net award of past economic damages in the amount of $26,031.08[.]

## II

[¶ 4] The certified question involves interpretation of the statutory scheme for underinsured motorist coverage. Statutory interpretation presents a question of law, which is fully reviewable on appeal. *Jund v. Johnnie B's Bar & Grill, Inc.*, 2011 ND 230, ¶ 9, 814 N.W.2d 776. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or a contrary intention plainly appears. N.D.C.C. § 1-02-02. Statutes are construed as a whole and, if possible, are harmonized to give meaning to related provisions. N.D.C.C. § 1-02-07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05. The language of a statute must be interpreted in context and according to the rules of grammar. N.D.C.C. § 1-02-03. It is presumed that the "entire statute is intended to be effective." N.D.C.C. § 1-02-38(2). This Court presumes the legislature did not intend an unreasonable result or unjust consequences. *See* N.D.C.C. § 1-02-38(3); *Jund*, at ¶ 9. "A statute is ambiguous if it is susceptible to different, rational meanings." *Jund*, at ¶ 9. When a statute's language is ambiguous, a court may consider the object sought to be obtained, former statutory provisions, and legislative history to determine the intention of the legislation. N.D.C.C. § 1-02-39.

## III

[¶ 5] "Underinsured motorist insurance is a first party coverage arrangement that entitles an insured to compensation for injuries from the insurer." *Wisness v. Nodak Mutual Ins. Co.*, 2011 ND 197, ¶ 9, 806 N.W.2d 146 (quoting 3 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance* § 32.1 n. 1 (3d ed.2005)). In North Dakota, underinsured motorist coverage is governed by statute. *See* N.D.C.C. §§ 26.1-40-15.1 to 26.1-40-15.7. Although these statutes provide the minimum requirements for underinsured coverage, an insurer's policy may provide an insured with greater coverage. *See* N.D.C.C. § 26.1-40-15.7(5); *Jund*, 2011 ND 230, ¶ 7, 814 N.W.2d 776; *Sandberg v. American Family Ins. Co.*, 2006 ND 198, ¶ 8, 722 N.W.2d 359; *DeCoteau v. Nodak Mut. Ins. Co.*, 2000 ND 3, ¶ 17, 603 N.W.2d 906. The parties in this case do not contend Owners' policy provides greater underinsured coverage than required by statute. The resolution of the certified question before us, therefore, is governed by the statutory scheme providing underinsured coverage.

[¶ 6] Under N.D.C.C. § 26.1-40-15.1(2), an "underinsured motor vehicle" means "a motor vehicle for which there is a bodily injury liability insurance policy . . . in effect at the time of the accident" with a limit that is less than the insured's underinsured motorist coverage limit or that has been reduced by payments to other persons injured in the accident to an amount less than the insured's underinsured limit. In this case, Hiltner and

Owners do not dispute the Denault vehicle is an "underinsured motor vehicle."

[¶ 7] Because Hiltner's underinsured coverage with Owners was triggered, N.D.C.C. § 26.1–40–15.3(1) provides what the underinsured coverage must pay:

The insurer shall also provide underinsured motorist coverage at limits equal to the limits of uninsured motorist coverage. *Underinsured motorist coverage must pay compensatory damages which an insured is legally entitled to collect for bodily injury, sickness, disease,* including death resulting therefrom, *of such insured, from the owner or operator of an underinsured motor vehicle* arising out of the ownership, maintenance, or use of such underinsured motor vehicle.

(Emphasis added.) Section 26.1–40–15.3(2), N.D.C.C., provides the maximum liability of underinsured coverage:

The maximum liability of the underinsured motorist coverage is the lower of:

a. The amount of compensatory damages established but not recovered by any agreement, settlement, or judgment with or for the person or organization legally liable for the bodily injury, sickness, disease, or death resulting therefrom; or

b. The limits of liability of the underinsured motorist coverage.

This Court has said that when the threshold definition of underinsured vehicle is satisfied, the insurer's maximum liability under this subsection is "the lowest of (1) the compensatory damages established but not recovered from the tortfeasor, or (2) the insured's liability limits for underinsured coverage." *DeCoteau,* 2000 ND 3, ¶ 16, 603 N.W.2d 906.

[¶ 8] This issue in this case involves the proper calculation of the offset required under N.D.C.C. § 26.1–40–15.4(1), which addresses reductions to the damages payable for underinsured coverage:

1. *Any damages payable* to or for any insured *for uninsured or underinsured motorist coverage* must be reduced by:

   a. The amount paid, or payable under any workforce safety and insurance or other similar law, exclusive of nonoccupational disability benefits; and

   b. Amounts *paid or payable* under *any* valid and collectible motor vehicle medical payments, personal injury protection insurance, or similar motor vehicle coverages.

(emphasis added). We have explained this subsection "allows insurers to reduce damages paid to the insured for underinsured coverage only for amounts paid or payable under workers compensation law and under the insured's first-party motor vehicle coverage." *DeCoteau,* 2000 ND 3, ¶ 16, 603 N.W.2d 906.

[¶ 9] Hiltner argues N.D.C.C. § 26.1–40–15.4(1) should be construed to require deducting no-fault benefits paid from the past economic damages award *before* reducing for the percentage of fault attributable to Hiltner and other parties for whose conduct Owners is not responsible. In arguing the no-fault benefits paid to Hiltner must be deducted from the past economic damages award before reducing for the percentage of fault, Hiltner agrees the comparative fault provisions of N.D.C.C. § 32–03.2–02 limit her recovery against Owners for underinsured coverage to the 55 percent of fault allocated to Denault—the driver of the motor vehicle—and that a reduction of $30,000 for the no-fault benefits paid to her is appropriate. She contends, however, that N.D.C.C. § 26.1–40–15.4(1)(b) is ambiguous and argues a "reasonable interpretation" of the statute is to invoke the offset at the point

of the district court's award of past economic damages, and then to reduce that amount by the comparative fault. She asserts her calculation is more appropriate and reasonable than the calculation put forth by Owners and avoids the "injustice" of Owners' construction. She contends Owners' interpretation of N.D.C.C. § 26.1-40–15.4(1)(b) would deprive Hiltner of a full recovery and result in Owners receiving an approximate $13,000 windfall.

[¶ 10] Although the parties and the amicus curiae have cited cases from other jurisdictions and argued about broad implications of the certified question, we answer the question in the context of the underinsured statutory offset provided in N.D.C.C. § 26.1–40–15.4(1)(b) and the statutes governing underinsured coverage in North Dakota and our prior case law construing those statutes.

[¶ 11] This Court has extensively discussed the legislative history and public policy considerations for North Dakota's statutory scheme mandating underinsured coverage. *See Jund*, 2011 ND 230, ¶¶ 10–15, 814 N.W.2d 776; *DeCoteau*, 2000 ND 3, ¶¶ 8–15, 603 N.W.2d 906; *see also Sandberg*, 2006 ND 198, ¶ 12, 722 N.W.2d 359 (discussing *DeCoteau*). In *DeCoteau*, we discussed two types of underinsured motorist coverage, "gap" or "difference-in-limits" coverage and "excess" coverage, and explained the differences between those coverages:

> [Gap or difference-in-limits] coverage places the insured party in the same position that he would have been in had the tortfeasor carried liability insurance in the amount of the insured's underinsured motorist policy limit. Under this "gap" theory of underinsured motorist coverage—so-called because the coverage merely fills the "gap" between the tortfeasor's liability coverage and the injured party's underinsured motorist cov-

erage, a driver is considered "underinsured" when his liability coverage does not at least equal *the uninsured/underinsured coverage carried* by the injured insured.

> Under [excess coverage], underinsured motorist coverage supplies a fund for full compensation to the injured insured and thus the insured is entitled to compensation from his insurer regardless of any recovery obtained from other sources. The insured may therefore recover underinsured motorist benefits until his policy limits are reached or he is fully compensated for his damages, whichever comes first. Under this "excess" theory of underinsured motorist coverage—*i.e.*, the injured insured's coverage being reckoned as "excess" over and above the liability policy of the tortfeasor, a tortfeasor is "underinsured" when his liability coverage does not at least equal the *damages suffered* by the injured insured.

*DeCoteau*, at ¶ 8 (quoting *North River Ins. Co. v. Tabor*, 934 F.2d 461, 464 (3d Cir. 1991)).

[¶ 12] In *Jund*, 2011 ND 230, ¶¶ 11–13, 814 N.W.2d 776, we further discussed *DeCoteau* and the legislative history regarding the 1989 amendments to the underinsured statutes and specifically discussed N.D.C.C. § 26.1–40–15.4(1). Our discussion revealed the legislature's competing intentions to both make the insured whole and avoid duplication for recovery of the same loss:

> In *DeCoteau*, 2000 ND 3, ¶ 9, 603 N.W.2d 906, we discussed the history of underinsured motorist coverage in North Dakota and explained that the 1987 legislature enacted mandatory difference-in-limits coverage. *See* 1987 N.D. Sess. Laws ch. 369. The 1989 legislature amended the mandat[o]ry minimum requirements for underinsured

motorist coverage, and the relevant statutory language has not been changed since then. *See* 1989 N.D. Sess. Laws ch. 375; *DeCoteau,* at ¶¶ 10–16. The 1989 legislature removed language authorizing difference-in-limits coverage from what became N.D.C.C. § 26.1–40–15.3(2) during the legislative process and adopted excess coverage if the tortfeasor's vehicle satisfied the definition of an underinsured vehicle. *DeCoteau,* at ¶ 12. *See* N.D.C.C. §§ 26.1–40–15.1(2) and 26.1–40–15.3(2). We explained the change was intended "to make insureds 'whole' by allowing them to recover underinsured benefits until their policy limits are reached or they are fully compensated for their injuries." *DeCoteau,* at ¶ 12 (citing *Hearing on H.B. 1155 Before the Conference Committee on Industry, Business, and Labor,* 51st N.D. Legis. Sess. (April 4, 1989) (testimony of Senators David Nething and Larry Schoenwald)). *See Score v. American Fam. Mut. Ins. Co.,* 538 N.W.2d 206, 209 n. 2 (N.D.1995) (construing underinsured policy language under 1987 statutes for difference-in-limits coverage and stating 1989 statutory provisions retain same definition of underinsured vehicle but "appear to require excess coverage if the vehicle is underinsured"). We further explained that N.D.C.C. § 26.1–40–15.4(1) "was intended to permit an offset against damages payable for benefits paid under workers compensation law and first party automobile coverage," and "was not intended to allow reductions for third-party liability coverage." *DeCoteau,* at ¶ 13. *We said, "The only purpose of [N.D.C.C. § 26.1–40–15.4(1) ] is to avoid a potential duplication for recovery of the same loss." DeCoteau,* at ¶ 13 (quoting *Hearing on H.B. 1155 Before the Conference Committee on Industry, Business, and Labor,* 51st N.D. Legis. Sess. (April 4 and 7, 1989) (prepared testimony of Thomas O. Smith, pp. 4–5)).

. . . .

The 1989 legislative history provides additional background for the purpose of the 1989 legislation, including a conference committee report to the House Industry, Business, and Labor Committee, which indicates that if underinsured motorist coverage is triggered under the definition of an underinsured motor vehicle, the insured is entitled to the limit of underinsured coverage available without an offset. *Hearing on H.B. 1155 Before the Conference Committee on Industry, Business, and Labor,* 51st N.D. Legis. Sess. (April 4 and 7, 1989) (H.B. 1155, *Report to House IBL Conference Committee on Engrossed H.B. 1155* ). The report states an "intent to amend (if necessary) the wording of engrossed bill HB 1155 so that when an insured qualified for underinsured motorists coverage, his policy would respond to the full limit of his coverage and not 'be diminished by an offset' which reduces the actual limit available to the insured." *Id.* The report further explains the " 'key' to interpreting when the underinsured motorist coverage is 'triggered' is found in the definition" of an underinsured motor vehicle, which "clearly sets forth specific requirements for determining what constitutes or 'triggers' an underinsured motorist claim." *Id. The legislative history and this Court's decision in DeCoteau,* 2000 ND 3, ¶ 13, 603 N.W.2d 906 (quoting prepared testimony by Thomas O. Smith), reflect the "only purpose of [N.D.C.C. § 26.1–40–15.4(1) ] is to avoid potential duplication for recovery of the same loss." Additional statements in the legislative history reflect an objective to make the insured "whole." *Conference Committee Hearing on H.B. 1155 Before the Conference*

*Committee on Industry, Business, and Labor*, 51st N.D. Legis. Sess. (April 4, 1989) (testimony of Senator David Nething).

*Jund*, 2011 ND 230, ¶¶ 11, 13, 814 N.W.2d 776 (emphasis added).

[¶ 13] In *Jund*, 2011 ND 230, ¶ 6, 814 N.W.2d 776, we addressed whether the insureds' ("the Junds") total compensatory damages or the insurer's ("Ransom County") underinsured coverage limit was the appropriate "starting point" under N.D.C.C. § 26.1–40–15.4(1)(a) for reducing "[a]ny damages payable to or for any insured for … underinsured motorist coverage" by the amount paid or payable to the insureds for WSI benefits. For summary judgment purposes, the Junds and Ransom County had stipulated that "the Junds' total compensatory damages for the accident exceeded the sum of the $100,000 received from [the other driver's] liability insurer, the $109,680.91 in benefits payable from WSI, and the $250,000 coverage limit from Ransom County's underinsured motorist coverage." *Jund*, at ¶ 2. The Junds and Ransom County had also stipulated the collision that injured Tracy Jund was solely the fault of the driver of the other vehicle.

[¶ 14] This Court acknowledged that the reducing language of N.D.C.C. § 26.1–40–15.4(1) was unclear regarding the "starting point" for the applicable reductions. *See Jund*, 2011 ND 230, ¶ 12, 814 N.W.2d 776. We observed that while "[t]he legislature used the phrase 'maximum liability of underinsured motorist coverage' and 'limits of liability of the underinsured motorist coverage' in N.D.C.C. § 26.1–40–15.3(2)," the legislature "did not use either of those phrases for the reducing provisions in N.D.C.C. § 26.1–40–15.4(1)," but rather "used the phrase '[a]ny damages.'" *Jund*, at ¶ 12. We therefore concluded the reducing language of N.D.C.C. § 26.1–40–15.4(1) was ambiguous. *Jund*, at ¶ 12. After considering the legislative history and purpose of the statutes, we construed the offset language of N.D.C.C. § 26.1–40–15.4(1) to require the reduction of benefits "paid or payable" under WSI law from the insured's total compensable damages, rather than from the underinsured coverage limit. *Jund*, at ¶ 17.

[¶ 15] The narrowly presented certified question in this case, however, only involves applying the offset required under N.D.C.C. § 26.1–40–15.4(1)(b) to reduce the award of past economic damages to Hiltner. Under N.D.C.C. § 26.1–40–15.4(1)(b), "[a]ny damages payable to or for any insured for … underinsured motorist coverage" must be reduced by amounts "paid or payable" to the insured "under any valid and collectible motor vehicle medical payments, personal injury protection insurance, or similar motor vehicle coverages." Unlike the underlying factual situation in *Jund*, however, the federal court found the driver of the underinsured motor vehicle in this case to be 55 percent at fault. The question then becomes, under our underinsured statutory scheme, whether the reduction of damages for comparative fault is calculated before or after the offset under N.D.C.C. § 26.1–40–15.4(1)(b) for the no-fault benefits paid to Hiltner.

[¶ 16] Generally, North Dakota's comparative fault statute, N.D.C.C. § 32–03.2–02, requires the damages of a person seeking recovery be reduced by that person's own contributory fault:

Contributory fault does not bar recovery in an action by any person to recover damages for death or injury to person or property unless the fault was as great as the combined fault of all other persons who contribute to the injury, *but any damages allowed must be diminished in*

*proportion to the amount of contributing fault attributable to the person recovering.* The court may, and when requested by any party, shall direct the jury to find separate special verdicts determining the amount of damages and the percentage of fault attributable to each person, whether or not a party, who contributed to the injury. The court shall then reduce the amount of such damages in proportion to the amount of fault attributable to the person recovering. *When two or more parties are found to have contributed to the injury, the liability of each party is several only, and is not joint, and each party is liable only for the amount of damages attributable to the percentage of fault of that party,* except that any persons who act in concert in committing a tortious act or aid or encourage the act, or ratifies or adopts the act for their benefit, are jointly liable for all damages attributable to their combined percentage of fault....

(Emphasis added.) Except for "in concert" action, this section replaced joint and several liability with several allocation of damages attributable to the percentage of fault of persons who contributed to the injury. *See, e.g., Haff v. Hettich,* 1999 ND 94, ¶ 14, 593 N.W.2d 383; *Reed v. Univ. of North Dakota,* 1999 ND 25, ¶ 34, 589 N.W.2d 880.

[¶ 17] Section 26.1–40–15.3(1), N.D.C.C., specifies the damages an underinsured policy must cover and requires the coverage to pay the "compensatory damages which *an insured* is *legally entitled to collect* for bodily injury ... of such insured, *from the owner or operator* of an underinsured motor vehicle arising out of the ownership, maintenance, or use of such underinsured motor vehicle." *Id.* (emphasis added). The plain language of this subsection looks specifically to the damages the insured is "legally entitled to collect" from the "owner or operator" of the underinsured motor vehicle.

[¶ 18] As one treatise explains, "Legally entitled to recover normally refers to issues of fault, which is determined by the application of legal principles. In addition, 'legally entitled to recover' requires that the claimant and the tortfeasor be of the proper class of persons in accordance with the terms of the statute...." 9 Steven Plitt, Daniel Maldonado, Joshua D. Rogers, Jordan R. Plitt, *Couch on Insurance 3d* § 123:15 (2015). "[L]egal entitlement requires the insured to demonstrate fault by the tortfeasor and the extent of the damages caused by the tortfeasor." *Id.* § 123:16. Another treatise explains:

In the days before comparative fault, if a plaintiff was responsible for plaintiff's own injury, the doctrine of contributory negligence would preclude plaintiff from recovering. Because of the contributory negligence bar, the plaintiff was not legally entitled to recover uninsured or underinsured motorist insurance. But contributory negligence has been displaced by comparative fault, which is considerably less likely to result in a complete bar to recovery for the plaintiff. Although there are relatively few cases that have litigated the point, courts generally allow the insurer to raise the defense that would have been raised by the tortfeasor and thereby to discount the amount the claimant would recover based on the claimant's own negligence.

6 Jeffrey E. Thomas & Christopher J. Robinette, *New Appleman on Insurance Law Library Edition* § 65.03[2] (2015). *See also* 3 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance* § 34.1 (3d rev. ed. 2005) ("The language 'legally entitled to recover' is undoubtedly intended to mean

that a claimant is only entitled to indemnification for injuries resulting from the tortious conduct of an underinsured motorist.").

[¶ 19] This Court has also previously applied the comparative fault provisions of N.D.C.C. § 32–03.2–02, in a case involving underinsured coverage and non-economic damages. In *Haff*, 1999 ND 94, ¶¶ 7, 10–23, 593 N.W.2d 383, Haff argued his underinsured insurer should be responsible for all non-economic damages proximately caused by Hettich but not paid by Hettich's insurer. *Haff*, at ¶ 10. Haff argued the underinsured benefits should also include the 60 percent fault that had been attributed to Haff's chiropractors. *Id.* Haff's underinsured insurer responded that N.D.C.C. § 32–03.2–02 requires several apportionment of fault and damages among all persons who contributed to Haff's injuries. *Id.* This Court ultimately held that N.D.C.C. § 32–03.2–02 requires apportionment of damages based on the percentages of fault attributable to the original tortfeasor and medical care providers who negligently treated the original injury. *Haff*, at ¶ 23. This Court concluded the district court correctly applied N.D.C.C. § 32–03.2–02 to Haff's claim for non-economic damages, and his underinsured insurer was obligated for only 40 percent of Haff's damages attributable to Hettich. *Haff*, at ¶¶ 7, 23.

[¶ 20] Based on the forgoing, we construe the phrase "legally entitled to collect" in N.D.C.C. § 26.1–40–15.3(1) as defining the compensatory damages payable under underinsured coverage and contemplating an initial allocation for comparative fault under N.D.C.C. § 32–03.2–02. That is, the scope of the damages underinsured coverage must pay is the compensatory damages attributable to the comparative fault of the owner or operator of the underinsured vehicle. In this case, the oper-

ator of the motor vehicle was found to be 55 percent at fault.

[¶ 21] Hiltner asserts she is not seeking a double recovery and Owners' construction of N.D.C.C. § 26.1–40–15.4(1)(b) would deprive her of a full recovery. She contends that in *Hartman v. Estate of Miller*, 2003 ND 24, ¶¶ 21–25, 656 N.W.2d 676, this Court affirmed a district court's refusal to grant an insurer's request for an offset under N.D.C.C. § 26.1–40–15.4(1)(b). The district court in *Miller* had reasoned there was no double recovery because evidence of medical expenses was not allowed at trial and the future economic damages awarded by the jury could not be set off against amounts the insurer paid under no-fault for past medical expenses. *Id.* at ¶ 24. The issue raised in *Miller*, however, was whether the district court had abused its discretion in refusing to offset economic damages awarded to the insured to the extent of the no-fault benefits paid or to be paid by the insurer. *Id.* at ¶ 21. This Court concluded the court had not abused its discretion in refusing the insurer's request for an offset based on the court's explanation. *Id.* at ¶ 25. The issue in *Miller* did not raise an issue of statutory interpretation, and this Court did not construe N.D.C.C. § 26.1–40–15.4(1)(b) in resolving the issue.

[¶ 22] In applying the offset provision for the no-fault benefits paid in this case, N.D.C.C. § 26.1–40–15.4(1)(b) provides that "[a]*ny damages payable* to or for any insured *for ... underinsured motorist coverage* must be reduced by ... [a]mounts *paid or payable* under any valid and collectible motor vehicle medical payments, personal injury protection insurance, or similar motor vehicle coverages." (Emphasis added.) As we explained in *DeCoteau*, 2000 ND 3, ¶ 16, 603 N.W.2d 906, "The language of N.D.C.C. § 26.1–40–15.4(1) allows insurers to reduce damages

paid to the insured for underinsured coverage only for amounts paid or payable under workers compensation law and under the insured's first-party motor vehicle coverage."

[¶ 23] The legislative history for N.D.C.C. § 26.1–40–15.4(1) makes clear that subsection 1, which the legislature ultimately left in the statutory scheme, is concerned with underinsured coverage affordability and avoiding potential duplication of coverage:

> Subsection 1 addresses the issue of affordability of coverage. The subsection is designed to prevent potential duplication of coverage for the same loss by making worker's compensation, automobile medical payments, and personal injury protection coverage primary, while making uninsured motorist and underinsured motorist secondary. Subsection 1 does not in any way reduce the amount of coverage that is available for either uninsured or underinsured motorist coverages. It only addresses how one deals with "damages" in determining what amount the insurance company must pay under those coverages.

The best way of understanding this may be through an example. Assume, for sake of discussion, that an uninsured driver runs into someone and seriously injures them. The injured person, who is insured, receives $30,000 in basic no-fault benefits. It is determined that as a result of the motor vehicle accident, the injured person's total damages are $100,000. The injured person also has available $100,000 in uninsured motorist coverage. The Senate amendment, by deleting the existing language, would allow the injured person to recover the entire $100,000 even though he has already been paid $30,000 in no-fault benefits. This results in duplicate benefits being paid. Subsection 1, if left in the

Bill, would require the total damages of $100,000 to be reduced by the $30,000 in no-fault benefits that had been paid. Then the injured person would only be entitled to recover $70,000 in damages for which he has not been paid.

The injured person is actually compensated for his damages. The only purpose of subsection 1 is to avoid a potential duplication for recovery of the same loss.

*Hearing on H.B. 1155 Before the Conference Committee on Industry, Business, and Labor*, 51st N.D. Legis. Sess. (April 4 and 7, 1989) (prepared testimony of Thomas O. Smith, pp. 4–5). To avoid the "potential duplication" of recovery, the legislature adopted the language in N.D.C.C. § 26.1–40–15.4(1) to permit insurers to reduce the damages paid to insureds for underinsured coverage by the amounts paid or payable for worker's compensation, automobile medical payments, and personal injury protection coverage, which are considered "primary," while the underinsured coverage remains "secondary." Although the example provided in the legislative testimony states the "total damages" of $100,000 would be reduced by the $30,000 in no-fault benefits, the example undoubtedly assumes the uninsured driver was completely at fault with all damages attributable to the driver.

[¶ 24] The plain language of N.D.C.C. § 26.1–40–15.4(1)(b) contemplates a reduction to "[a]ny damages payable to or for any insured for" underinsured coverage by the "[a]mounts paid or payable under *any* valid and collectible motor vehicle medical payments, personal injury protection insurance, or similar motor vehicle coverages." (Emphasis added.) As discussed, the purpose of N.D.C.C. § 26.1–40–15.4(1) is not only "to avoid potential duplication for recovery of the same loss," but also to make underinsured cov-

erage secondary to the primary coverages of worker's compensation, automobile medical payments, and personal injury protection coverage. *See Jund,* 2011 ND 230, ¶ 13, 814 N.W.2d 776; *DeCoteau,* 2000 ND 3, ¶ 13, 603 N.W.2d 906. If we were to construe the statute to allow the reduction of the damages for underinsured coverage by the no-fault benefits paid *before* the allocation of damages based on comparative fault, the effect would be to also reduce the amount of the offset specifically provided for in N.D.C.C. § 26.1–40–15.4(1)(b).

[¶ 25] It could be argued that the damages for underinsured motorist coverage should not include the economic damages paid by no-fault benefits in the first instance, because under N.D.C.C. § 26.1–41–08(1)(b), a "secured person is exempt from liability to pay damages for . . . [e]conomic loss to the extent of all basic no-fault benefits paid or to become payable for such injury . . . ." That argument postulates that under N.D.C.C. § 26.1–40–15.3(1), an underinsured coverage insured would not be "legally entitled to collect" those damages from the "owner or operator" of the underinsured motor vehicle in the first place. This interpretation, however, would render the offset to damages for underinsured coverage for the no-fault benefits paid, provided in N.D.C.C. § 26.1–40–15.4(1)(b), superfluous. "We construe statutes in a way which does not render them meaningless because we presume the Legislature acts with purpose and does not perform idle acts." *Meier v. N.D. Dep't of Human Servs.,* 2012 ND 134, ¶ 10, 818 N.W.2d 774; *see also* N.D.C.C. § 1–02–38(2).

[¶ 26] We believe a calculation that reduces the no-fault offset by an allocation of fault would improperly interject a fault allocation into what we have said is plainly a no-fault benefit. *Cf. Haff v. Hettich,* 1999 ND 94, ¶ 35, 593 N.W.2d 383 ("The

plain language of the no-fault statutes specifically requires payment of basic no-fault benefits 'without regard to fault.' N.D.C.C. § 26.1–41–06."). We, therefore, do not interpret N.D.C.C. § 26.1–40–15.4(1)(b) to allow such a reduction of the offset to the damages for underinsured coverage for the no-fault benefits paid or payable based on allocation of comparative fault.

[¶ 27] It is undisputed here that Hiltner received $30,000 in no-fault benefits. Under the specific question presented to this Court, construing N.D.C.C. §§ 26.1–40–15.3(1) and 26.1–40–15.4(1)(b) together and in conjunction with comparative fault law, we conclude the court should first reduce the past economic damages for the percentage of fault attributable to the plaintiff, *i.e.,* the underinsured insured, and other persons or parties, other than the operator or owner of the underinsured motor vehicle, and then deduct the no-fault benefits paid.

### IV

[¶ 28] We answer the certified question, "No."

[¶ 29] GARY H. LEE, D.J., DALE V. SANDSTROM, Acting C.J. and DANIEL J. CROTHERS, J., concur.

[¶ 30] The Honorable GARY H. LEE, D.J., sitting in place of VANDE WALLE, C.J., disqualified.

KAPSNER, Justice, dissenting.

[¶ 31] I respectfully dissent. The answer to the certified question should be "Yes." There are five reasons on which I base this answer:

1. This answer is mandated by the statutory requirement of "legally entitled to collect" provided in Chapter 26.1–40 and gives due regard to the

"no-fault" provisions of Chapter 26.1–41.

2. This answer does not violate, but rather accords with, the express legislative intent in the 1989 amendments to Chapter 26.1–40 because it results in no double recovery and comes closest to making the insured whole.

3. This answer supports the intent of comparative fault and our prior caselaw on comparative fault.

4. This answer is consistent with our prior caselaw interpreting Chapter 26.1–40.

5. A separate premium is paid for the underinsured coverage.

### 1.

[¶ 32] Section 26.1–40–15.4(1)(b), N.D.C.C., prevents double recovery of no-fault benefits: "Any damages payable to or for any insured for uninsured or underinsured motorist coverage must be reduced by ... [a]mounts paid or payable under any valid and collectible motor vehicle medical payments, personal injury protection insurance, or similar motor vehicle coverages." Chapter 26.1–40 does not specifically identify how or when the reduction for medical payments is to be made. However, in paragraph 7, the majority quotes statutory language that is key to a determination of underinsured coverage:

The insurer shall also provide underinsured motorist coverage at limits equal to the limits of uninsured motorist coverage. Underinsured motorist coverage must pay compensatory damages which an insured is *legally entitled to collect* for bodily injury, sickness, disease, including death resulting therefrom, of such insured, from the owner or operator of an underinsured motor vehicle arising out of the ownership, mainte-

nance, or use of such underinsured motor vehicle.

N.D.C.C. § 26.1–40–15.3(1) (emphasis added).

[¶ 33] The majority improperly interprets this language in paragraphs 25 and 26 where it rejects N.D.C.C. § 26.1–41–08(1)(b) as an inter-related provision that gives content to the phrase "legally entitled to collect." Under section 26.1–41–08(1)(b), a secured person is "exempt from liability to pay damages for: ..., [e]conomic loss to the extent of all basic no-fault benefits paid or to become payable" for accidental bodily injury arising from the operation of a secured motor vehicle. This does not render the phrase "legally entitled to collect" superfluous but, rather, gives content to the phrase. Because the insured cannot collect the no-fault benefits from the owner or operator of the underinsured motor vehicle, this amount must be deducted from the compensatory damages *before* allocation of fault because it cannot be considered in the damages which are collectible under underinsured motorist coverage. The majority is simply wrong in stating, as it does in paragraph 24, that to construe the statute to allow the reduction before the allocation of damages based upon comparative fault would be to reduce the amount of offset provided for in N.D.C.C. § 26.1–40–15.4(1)(b). Hiltner does not contest that she has been paid $30,000 in medical benefits and that her total damages must be reduced by this amount. Because the medical benefits are not based on fault, they are not among the damages that should be allocated by the comparative fault assigned to the individuals involved in this accident.

### 2.

[¶ 34] The majority opinion quotes extensively from the legislative history arising from the amendments to the insurance law in 1989. It is unnecessary to repeat

much of this history except to note that it expresses two main purposes: 1) avoid duplication of recovery, and 2) make the insured "whole" to the greatest extent possible. The answer propounded by the majority satisfies the first purpose, but violates the second. The answer "Yes" satisfies both purposes.

[¶ 35] The legislative history in paragraph 23 of the majority opinion emphasizes: "Subsection 1 [of N.D.C.C. § 26.1–40–15.4] does not in any way reduce the amount of coverage that is available for either uninsured or underinsured motorist coverages." With either answer, Hiltner will have collected $30,000 in no-fault medical benefits. However, under the majority's answer, the full $30,000 will benefit the insurer and Hiltner will collect approximately $13,000 less of past economic damages from the underinsured motorist coverage. In violation of express legislative intent, her underinsured coverage will have been reduced. She will not be made "whole" in either case, but she will be made less "whole" if the answer is "No." That result is not what the legislature specifically stated it intended when it amended the Chapter in 1989.

### 3.

[¶ 36] The answer offered by the majority confuses issues of no-fault and comparative fault. It also gives the full benefit of no-fault medical benefits to one party determined to be at fault, a result at odds with our notions of comparative fault under N.D.C.C. ch. 32–03.2. The district court determined three people were at fault—the driver, a passenger, and Hiltner. Yet, the allocation of the no-fault benefits is entirely to the benefit of the driver's insurer, resulting in a reduction of underinsured benefits to Hiltner.

[¶ 37] In *Haff v. Hettich*, 1999 ND 94, ¶ 35, 593 N.W.2d 383, this Court stated:

The modified comparative fault provisions of N.D.C.C. ch. 32–03.2 generally sketch a fault-based tort system for apportionment of fault and damages, while the no-fault provisions of N.D.C.C. ch. 26.1–41 specifically pertain to personal injuries sustained in motor vehicle accidents. *Cf.* N.D.C.C. § 32–03.2–02.1 (limiting application of comparative fault for property damage sustained in motor vehicle accident). The plain language of the no-fault statutes specifically requires payment of basic no-fault benefits "without regard to fault." N.D.C.C. § 26.1–41–06. We believe the purpose of the no-fault system to transfer victim compensation for personal injuries arising out of motor vehicle accidents from a fault-based tort recovery to a compulsory no-fault insurance would be seriously undermined if our no-fault statutes applied modified comparative fault principles to medical malpractice in treating personal injuries sustained in a motor vehicle accident.

The holding in *Haff* separates the liability of the respective tortfeasors and maintains the separation of the concept of fault from the concept of no-fault. The majority's answer in this case does not. However, deducting the no-fault medical benefits from the damages before allocation of fault would preserve the allocation of fault and the respective liabilities of the parties regarding Hiltner's injuries. It would preserve the distinction of "no-fault" benefits and comparative fault determinations of liability inherent in our statutory scheme.

[¶ 38] A further problem results from the majority's answer. Liability was assigned to three persons in this accident. Under N.D.C.C. § 26.1–41–01, an occupant of a secured motor vehicle is a secured person who is also exempt from liability under section 26.1–41–08 for no-fault benefits paid. To the extent the court fails to deduct the no-fault benefits *before* the allo-

cation of fault, there is a potential for each party at fault to claim a reduction of damages based upon the no-fault benefits paid. *See Moser v. Wilhelm*, 300 N.W.2d 840, 847 (N.D.1980), decided under the law prior to the 1989 amendment:

> In this case, the evidence shows that both vehicles involved were "secured motor vehicles" pursuant to Section 26–41–03(16). Therefore, Long, Moser, and Wilhelm [two drivers and a passenger] were all "secured persons" pursuant to Section 26–41–03(17). In accordance with Section 26–41–12, N.D.C.C., all were exempt from liability for economic losses to the extent of all basic no-fault benefits paid or payable. Therefore, because Moser had not exhausted her basic no-fault benefits, she was properly prevented from introducing evidence of economic loss.

Under the answer given by the majority, if Hiltner were to sue the passenger also found to be at fault, the application of the secured person exemption would also reduce collectible damages, a further insult to the express legislative intent of 1989.

[¶ 39] In *Norman v. Farrow*, 880 So.2d 557 (Fla.2004), the Supreme Court of Florida was faced with a similar decision about the calculation of damages when a plaintiff had received PIP (personal injury protection) benefits, but was also comparatively negligent. That court held that to harmonize the concepts of personal injury protection benefits, where the injured person "shall have no right to recover any damages for which personal injury protection benefits are paid or payable" with the concept of comparative negligence, the proper allocation was as follows:

> Reading these statutes in conjunction, we find that pursuant to section 627.736(3), which bars all recovery of damages paid or payable by PIP benefits, the amount for which PIP benefits

have been paid or payable is to be deducted by the trier of fact from the amount awarded as economic damages in the verdict. Those amounts are not recoverable. Following that deduction, the noneconomic damages awarded should be added and then the percentage of comparative negligence found by the trier of fact is to be applied to reduce the amount of damages which are recoverable from the tortfeasor. The remainder is the amount of the judgment.

*Id.* at 559–61 (footnotes omitted). Our statutory scheme of no-fault benefits is very similar to Florida's personal injury protection benefits. The rationale in the Florida case is clear and accurately reflects the purpose of compensation under a comparative fault system. Following this same rationale, our North Dakota statutes also require reduction for receipt of no-fault benefits before allocation of damages.

### 4.

[¶ 40] Although the majority tries to explain to the contrary, our prior caselaw indicates that the answer should be "Yes."

[¶ 41] Hiltner is correct that this Court has already affirmed a trial court's refusal to allow an insurer's request to offset under N.D.C.C. § 26.1–40–15.4(1)(b). *See Hartman v. Estate of Miller*, 2003 ND 24, 656 N.W.2d 676. In that case, it was not necessary to construe the section because there was no double recovery. Evidence of medical benefits recovered under no-fault provisions had not been allowed at trial. *Id.* at ¶¶ 24–25. Because N.D.C.C. § 26.1–41–08(1)(b) makes a secured person exempt from liability for no-fault benefits, it is not unusual to prevent the plaintiff in an action based on fault from seeking no-fault benefits already recovered as damages in the action. *See Moser*, 300 N.W.2d at 847.

[¶ 42] In *DeCoteau v. Nodak Mutual Ins. Co.*, 2000 ND 3, 603 N.W.2d 906, we did an extensive review of the legislative history of the amendments to Chapter 26.1–40 noting specifically "[t]he legislative history reflects the legislature deleted difference-in-limits language from the introduced version of what became N.D.C.C. § 26.1–40–15.3(2), *see* fn. 1, to make insureds 'whole' by allowing them to recover underinsured benefits until their policy limits are reached or they are fully compensated for their injuries." *Id.* at ¶ 12. We reiterated this understanding in *Jund v. Johnnie B's Bar & Grill, Inc.*, 2011 ND 230, ¶ 14, 814 N.W.2d 776. We noted the Report to House IBL Conference Committee on Engrossed H.B. 1155 states an "intent to amend (if necessary) the wording of engrossed bill H.B. 1155 so that when an insured qualified for underinsured motorists coverage, his policy would respond to the full limit of his coverage and not 'be diminished by an offset' which reduces the actual limit available to the insured." *Id.* at ¶ 13. That language, along with the Report's directive that the "only purpose is to avoid potential duplication for recovery of the same loss," guided our decision in *Jund,* and it should guide our decision in this certified question. In *Jund,* we construed the language of N.D.C.C. § 26.1–40–15.4(1) "to require the reduction for benefits paid or payable under any WSI law from the insured's total compensable damages and *not* from the insured's underinsured motorist coverage limit." *Id.* at ¶ 17 (emphasis added). The reasoning of that decision should control our answer to the federal court. Our answer should be "Yes."

5.

[¶ 43] Our legislature requires insurers to offer underinsured coverage, *see* N.D.C.C. § 26.1–40–15.3(1), and insurers charge a separate premium for this coverage. It is a separate insurance benefit, which serves the purposes of Chapter 26.1–40. The insurer's obligation to pay claims under this separate benefit is based on fault, because it is determined by those amounts which the insured is "legally entitled to collect." It should not be confused with no-fault benefits. Yet, that is the result of the answer that the majority has given to the federal court in this case.

[¶ 44] For these reasons, I dissent. The answer should be "Yes."

[¶ 45] CAROL RONNING KAPSNER